## UNITED STATES of America, Plaintiff–Appellee,

v.

## Norman WEISSMAN, Joseph F. Maimone, a/k/a "Tony", S. Joseph Santoro, a/k/a "Hollywood Joe", Defendants–Appellants.

### No. 89–5242.

United States Court of Appeals, Eleventh Circuit.

April 30, 1990.

Harry Gulkin, Ft. Lauderdale, Fla., for Norman Weissman.

James D. McMaster, Coral Gables, Fla., for Joseph F. Maimone.

Anthony F. Leonardo, Jr., Rochester, N.Y., for S. Joseph Santoro.

Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Kevin March, U.S. Dept. of Justice Strike Force, Tampa, Fla., Brian McCormick, Ft. Lauderdale, Fla., U.S. Dept. of Justice Sara Criscitelli, U.S. Dept. of Justice, Washington, D.C., for U.S.

Before FAY and KRAVITCH, Circuit Judges, and KAUFMAN\*, Senior District Judge.

FAY, Circuit Judge:

Appellants Joseph Maimone, Joseph Santoro and Norman Weissman were convicted by a jury of RICO conspiracy. Among their several challenges to their respective convictions, all appellants contend that the trial judge erred in instructing the jury on the enterprise element of the crime of RICO conspiracy so that the jury could have convicted appellants on the basis of appellants' involvement in some enterprise other than the enterprise described by the indictment. Because we find that the jury instruction given by the trial court constructively amended the grand jury indictment, making it possible that appellants were convicted on grounds not charged in the indictment, we REVERSE appellants' convictions.

## BACKGROUND

On December 22, 1987, a grand jury in Fort Lauderdale returned an eight-count indictment against Carmelo Cocchiaro, Rosario Cocchiaro, Ralph Reda, Joseph Maimone, Joseph Santoro, and Norman Weissman alleging substantive violation of the RICO statute, conspiracy to violate RICO, and six specific acts of extortion violating other federal statutes. The first paragraph of Count One states, "At all times relevant to this Indictment, Frank Cocchiaro, a/k/a 'Big Frank', named as a co-conspirator but not as a defendant herein, was a 'capo' in the DeCavalcante Family of La Cosa Nostra, until his death in November, 1985." R1-1-1. The succeeding six paragraphs allege that Carmelo Cocchiaro, Rosario Cocchiaro and Ralph Reda were members of the DeCavalcante Family and particularly connected to "Big Frank," while the remaining defendants are denominated associates of "Big Frank." Paragraph eight defines the enterprise as "a group of individuals associated in fact known as the DeCavalcante Family of La Cosa Nostra." R1-1-2.

Count Two, the RICO conspiracy charge under which appellants were convicted, alleges that defendants

knowingly and willfully combined, conspired, confederated and agreed together, and with each other, and with Frank Cocchiaro, a/k/a "Big Frank," ... to commit offenses against the United States, that is, while employed by or associated with an enterprise, to wit, a group of individuals associated in fact known as the DeCavalcante Family of La Cosa Nostra....

R1-1-8. All of the other paragraphs in Counts One and Two connect some subset of the defendants with "Big Frank." Counts Three through Eight likewise include "Big Frank" as a participant in the sundry types of wrongdoing alleged.

In the course of pre-trial activity, Rosario Cocchiaro and Ralph Reda pleaded guilty to Count Two, and the court dismissed Count Five against the remaining defendants. Trial against Carmelo Cocchiaro, Maimone, Santoro and Weissman commenced January 4, 1989. The government's opening argument made repeated reference to the DeCavalcante Family, La Cosa Nostra, and "Big Frank" as the key connecting factors amongst the defendants. Throughout the trial, the government introduced evidence and testimony to show defendants' links with the DeCavalcante Family and to "Big Frank" in particular. The government's closing arguments emphasized that the en-

---

\* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

terprise in which defendants were involved was the DeCavalcante Family.

The trial court's initial instructions to the jury incorporated the definition of enterprise found in the indictment:

Count 2, R.I.C.O. conspiracy, charges that while so employed by and associated with the enterprise, the defendants knowingly and willfully conspired with each other, and other coconspirators to conduct and participate in the affairs of the enterprise through the pattern of racketeering activity discussed above.

. . . .

The term enterprise includes any partnership, corporation, association, or any legal entity, or any union or group of individuals associated in fact although not a legal entity. In this case, Count 1 of the indictment defines the enterprise as a group of individuals associated in fact as the DeCavalcante Family of La Cosa Nostra.

R10–970–71. After retiring to deliberate, however, the jury submitted a written query to the trial judge: "In reference to the R.I.C.O. substantive, page 10 of the Court's instruction to the jury, we would like paragraph two, sentence two clarified as to explanation of 'enterprise' as relates to the DeCavalcante Family. Are enterprise and DeCavalcante Family synonymous?" R10–1000. After entertaining suggestions and objections from counsel for the government and defendants, the trial court called the jury back to the courtroom and addressed the enterprise issue as follows:

[T]he Government is not required to prove every word of an indictment in order to get a conviction, but they do have to prove substantially what they have alleged in the indictment, and if there is a real variance between what they have put in the indictment, or what the Grand Jury put in the indictment . . .—if they fail in a substantial way to meet the allegation of the indictment with proof, then you must find for the defendant; but it isn't necessary for them to prove every nuance that may be found in the indictment.

So that, in this instance, I am interpreting your question this way. I gather there is a question, in order for the Government to get a conviction they have to show that the DeCavalcante Family was the enterprise. Well, that is not necessary, but it is necessary for the Government to prove that there was an enterprise as the enterprise term is defined in your instructions. . . .

So that, in answer to your question, in other words, are enterprise and DeCavalcante Family synonymous? No, they are not synonymous. But the broader question is whether or not the Government must prove that the DeCavalcante Family was the enterprise. They did allege it was the enterprise, but it isn't necessary for them to prove that the enterprise was the DeCavalcante Family if there was an enterprise proved that meets the definitions of the term.

. . . . You have a technical decision to make, and that is whether or not the Government has proved that these defendants who are charged with the R.I.C.O. substantive count were members or associated with an enterprise. While you don't have to conclude it was the DeCavalcante family, you do have to conclude that there was such an enterprise which is within the definitions that I have already given.

R10–1016–17.

The jury rendered its verdict on the following day. Carmelo Cocchiaro was acquitted on all counts. Maimone, Santoro and Weissman were acquitted on all counts save the RICO conspiracy count, which convictions they now appeal.

## DISCUSSION

In reviewing a challenged jury instruction, "we must examine the entire charge as a whole to determine whether it is an accurate statement of the issues and the law." *United States v. Caporale,* 806 F.2d 1487, 1514 (11th Cir.1986), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 763 & 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987); *United States v. Gordon,* 817 F.2d 1538, 1542 (11th Cir.1987) (per curiam), *va-*

*cated in part on other grounds,* 836 F.2d 1312 (11th Cir.), *cert. dismissed,* —— U.S. ——, 109 S.Ct. 28, 101 L.Ed.2d 979 (1988). "This Court will not reverse a conviction unless, after examining the entire charge, the Court finds that the issues of law were presented inaccurately, the charge included crimes not contained in the indictment, or the charge improperly guided the jury in such a substantial way as to violate due process." *United States v. Turner,* 871 F.2d 1574, 1578 (11th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989); *see also McElroy ex rel. McElroy v. Firestone Tire & Rubber Co.,* 894 F.2d 1504, 1509 (11th Cir. 1990).[1]

 An amendment occurs when the charging terms of an indictment are altered. *United States v. Peel,* 837 F.2d 975, 979 (11th Cir.1988); *United States v. Figueroa,* 666 F.2d 1375, 1379 (11th Cir.1982). A jury instruction that constructively amends a grand jury indictment constitutes per se reversible error because such an instruction violates a defendant's constitutional right to be tried only on charges presented in a grand jury indictment and creates the possibility that the defendant may have been convicted on grounds not alleged in the indictment. *Stirone v. United States,* 361 U.S. 212, 217–18, 80 S.Ct. 270, 273–74, 4 L.Ed.2d 252 (1960); *Peel,* 837 F.2d at 979; *United States v. Lignarolo,* 770 F.2d 971, 981 n. 15 (11th Cir.1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1948, 90 L.Ed.2d 358 (1986). A variance, by contrast, does not affect the elements of the crimes charged; rather, it occurs when the facts proved at trial differ from those alleged in the indictment. *Caporale,* 806 F.2d at 1499; *Figueroa,* 666 F.2d at 1379. A variance becomes reversible error only if the facts established in trial materially diverge from the facts in the indictment and the defendant suffers substantial prejudice

as a result. *Caporale,* 806 F.2d at 1499; *see United States v. McCrary,* 699 F.2d 1308, 1310 (11th Cir.1983).

 Appellants complain that the district court judge, in supplementing his original instruction on the enterprise element of RICO in response to the jury's request for clarification, impermissibly amended or created a prejudicial variance from the grand jury indictment. The government contends that the judge's explanation of what constituted the enterprise in this case was at most a minor variance from the indictment that caused appellants no prejudice. We cannot agree with the government's portrayal of the situation. After examining the entire discussion with the jury, we are convinced that the trial court's supplemental instructions more than merely varied from the indictment and actually amended the charges to allow the jury to convict appellants of a RICO conspiracy other than the one detailed by the grand jury in the indictment.

Section 1962(d) of Title 18 makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [section 1962]." 18 U.S.C.A. § 1962(d) (West Supp.1989). Appellants were convicted of conspiring to violate subsection (c) of section 1962, which subsection provides

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C.A. § 1962(c) (West 1984). A prior section defines the word enterprise to mean "any individual, partnership, corporation,

---

**1.** When the instructions, taken together, accurately express the law applicable to the case without confusing or prejudicing the jury, there is no reason for reversal even though isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism. An erroneous instruction does not require reversal unless the reviewing court is

left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.
*McElroy,* 894 F.2d at 1509 (quoting *National Indep. Theatre Exhibitors, Inc. v. Charter Fin. Group, Inc.,* 747 F.2d 1396, 1402–03 (11th Cir. 1984), *cert. denied,* 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985)).

association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4) (West 1984).

The government in styling the indictment could have used the general language of the statute to refer to the enterprise in which appellants allegedly were involved. Indeed, following this opinion, the government may well summon another grand jury and reindict appellants for conspiring to violate RICO in collusion with a more generally described enterprise. In the case before us, however, the government chose to specify that appellants were "associated with an enterprise, to wit, a group of individuals associated in fact known as the DeCavalcante Family of La Cosa Nostra." R1–1–8. The grand jury indictment emphasizes throughout appellants' alleged connection with "Big Frank" and participation in the DeCavalcante Family enterprise.

[I]t must be stressed that the government, through its ability to craft indictments, is the master of the scope of the charged RICO conspiracy. A section 1962(d) conspiracy is not a new generic category of conspiracy but a specific goal of traditional conspiracy law. This section of RICO is capable of providing for the linkage in one proceeding of a number of otherwise distinct crimes and/or conspiracies through the concept of enterprise conspiracy. The government, through the vehicle of the indictment, provides the linking conspiratorial objective of a *specific* RICO violation. The "specific" violation can be broad or narrow.... It is the prosecution which sets the parameters to which a RICO conspiracy trial must be confined; having set the stage, the government must be satisfied with the limits of its own creation.

*United States v. Neapolitan,* 791 F.2d 489, 501 (7th Cir.) (emphasis in original) (citation omitted), *cert. denied,* 479 U.S. 939, 940, 107 S.Ct. 421, 422, 93 L.Ed.2d 371, 372 (1986). The trial court, upon receiving the jury's inquiry, should have informed the jury that the enterprise in this case, in conformity with charges brought in this indictment, was synonymous with the DeCavalcante family. Instead, the court gave an instruction which accurately stated the general law, but in effect "altered an essential element of the crime charged." *Lignarolo,* 770 F.2d at 981 n. 15. In so doing, the district court constructively amended the indictment and committed reversible error. *See Figueroa,* 666 F.2d 1375; *United States v. Bizzard,* 615 F.2d 1080 (5th Cir.1980); *United States v. Salinas,* 601 F.2d 1279 (5th Cir.1979), *modified,* 610 F.2d 250 (5th Cir.1980) (per curiam).[2]

It is a fundamental principle of our system of criminal justice that "[a] defendant has a substantial right to be tried solely on [the] charges presented in an indictment

---

2. In *Figueroa,* the defendant was indicted for hijacking under 49 U.S.C. section 1472(i)(2) which defines hijacking as seizure "by force or violence or threat of force or violence, or by any other form of intimidation." The indictment charged the defendant with seizing an aircraft "*by force and violence,*" *Figueroa,* 666 F.2d at 1377, but the government only proved threats and intimidation at trial. Nonetheless, the defendant was convicted. This court determined that the defendant's conviction constituted a constructive amendment of the indictment because the defendant was tried and convicted on charges other than those contained in the grand jury indictment; this court rejected the government's thesis that the difference between the crime charged and the crime proved was a simple variance between the indictment and the proof.

Similarly, in *Bizzard,* the defendant was charged with violating a statute which criminalized putting life in jeopardy or assaulting any person while robbing a bank. The indictment charged the defendant with placing the lives of two bank tellers in jeopardy. At trial, however, the government introduced evidence of assault and the trial judge instructed the jury on assault. The former Fifth Circuit, the decisions of which bind this court, overturned defendant's conviction on the charged offense.

Finally, in *Salinas,* the indictment charged defendants with violations of 18 U.S.C. section 656. An essential element that the government had to prove was that each defendant be "an officer, director, agent or employee of the bank." *Salinas,* 601 F.2d at 1287–88. The grand jury charged Salinas as a "director." The trial court, however, instructed the jury that the Government only had to prove that Salinas was "an officer, director, agent or employee" of the bank. *Id.* at 1290. Again, the former Fifth Circuit reversed the defendant's conviction because the jury instruction constructively amended the indictment even though the instruction correctly stated the general law.

returned by a grand jury." *Bizzard,* 615 F.2d at 1082; *Stirone,* 361 U.S. at 217–18, 80 S.Ct. at 273–74; *United States v. Carroll,* 582 F.2d 942, 944 (5th Cir.1978). Under the instructions given here, the jury may well have convicted these defendants of being involved with an enterprise other than the one charged in the indictment.

The convictions are REVERSED and the matter remanded for appropriate proceedings.