# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 2, 2007　　　　　Decided October 23, 2007

No. 06-3053

UNITED STATES OF AMERICA,
APPELLEE

v.

ANDRE R. BROWN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 05cr00144-01)

*Ketanji Brown Jackson*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender.

*Daria J. Zane*, Assistant U.S. Attorney, argued the cause for appellee. On the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese, III*, *Lisa H. Schertler*, and *John P. Gidez*, Assistant U.S. Attorneys.

Before: SENTELLE and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: Andre Brown appeals his conviction for possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1), arguing that the district court erred in allowing the jury to find him guilty of possessing only ammunition when the grand jury had indicted him for possession of both a firearm and the ammunition found inside. For the following reasons, we reject Brown's arguments and affirm his conviction.

I.

On April 1, 2005, Metropolitan Police Officers conducted a "buy-bust" undercover drug investigation. Around 5:35 p.m., an undercover officer who had just completed a buy-bust with a different suspect witnessed Brown, who had just entered the parking lot, toss a plastic bag appearing to contain plant leaves behind a parked car and then get into the car's driver's seat. The undercover officer had already called in the arrest team to detain other suspects, but added instructions to stop Brown and recover the item he had just discarded behind his vehicle.

When arresting officers pulled into the parking lot in marked police cruisers, one cruiser parked immediately in front of Brown and his vehicle. Officer Robert Munn got out of the passenger door of that cruiser and walked directly towards Brown's vehicle. As Munn approached, he saw Brown reach for his waistband area, then reach over to open and close his glove box. In short order, Munn and the other officers removed Brown from the car, recovered a bag of marijuana from behind the vehicle and searched its interior. Upon opening the glove box, the officers found a loaded Hi-Point .45 caliber pistol. Officer Munn's initial affidavit in support of the sworn criminal complaint against Brown described the pistol as a "Hi-Point

9mm" rather than as a .45 caliber semi-automatic pistol.

By the time the case was presented to the grand jury, this discrepancy in the pistol's description was recognized and corrected. The grand jury returned a two count indictment against Brown charging him with possession of marijuana and with unlawfully possessing a firearm, "that is, a Hi-Point .45 caliber semi-automatic pistol, and did unlawfully and knowingly receive and possess ammunition, that is, .45 caliber ammunition" in violation of 18 U.S.C. § 922(g)(1) due to Brown's prior felony conviction.

When confronted at a pre-trial suppression hearing with the discrepancy between his charging document and the wording of the indictment, Officer Munn, rather than simply admitting he made a mistake on his charging document, insisted that he had only meant that the pistol appeared to be a 9mm due to its style, and then implied that the pistol in question may have been capable of shooting rounds of various calibers. Based on this discrepancy over the pistol's caliber, Brown moved to dismiss the indictment's firearm possession count prior to trial. After the court denied that motion, Brown made Munn's discrepancy the centerpiece of his defense at trial.

Prior to trial, the government submitted the standard "Red Book" jury instruction on the § 922(g)(1) count. The wording of this instruction only addressed possession of a firearm—not ammunition. Brown proposed instructions which would have required the government to show that he knowingly possessed both the firearm *and* the ammunition. The district court decided to use the "Red Book" instruction, despite its silence on the ammunition issue. Before sending the jury in for deliberations, however, the court recognized that the instruction was "a little misleading because [it] doesn't say anything about the ammunition at all, just the firearm, and they can find him guilty

4

of possession of ammunition and not the firearm, so it's either/or. I should tell them that."

After asking for any objections from counsel and hearing none, the court orally instructed the jury that it could find Brown guilty on the § 922(g)(1) count based on finding that he knowingly possessed either the firearm or the ammunition even though the indictment "charges possession of a firearm and ammunition." After giving the new instruction, the court conferred with counsel on the appropriate wording for the written instructions. The government requested a disjunctive instruction, with language that the defendant could be found guilty for possessing "ammunition or firearm or both," and the court proposed adopting this language. Brown's counsel objected to this disjunctive written instruction, arguing that the indictment said "and" and that the evidence the government had presented only supported a conjunctive wording. After consulting the statutory language, which reads "any firearm or ammunition," the court decided that the disjunctive instruction was appropriate.

The next day, while the jury was deliberating, the jury foreperson sent out a note asking for clarification of the jury instruction, and asked whether the jury had to find both possession of the ammunition and the firearm. The court proposed responding with a simple "no," though the government asked that the court use this opportunity to clarify the disjunctive nature of the instruction. Brown's counsel reiterated her position that the requirement should be phrased in the conjunctive "and" because that is what the indictment read, and that giving a disjunctive instruction now constituted a variance from the indictment. The court asked her if she had any authority to support her position that the court's instruction had created a fatal variance between the indictment and the jury instruction, but she had none. The government argued that the

"variance" was permissible because the government had put on evidence supporting a finding on the ammunition issue, and that, in any case, the statute's language trumped the indictment's.

Soon thereafter, the jury sent a note stating that it had reached a verdict, but when it returned to the courtroom to render the verdict, the foreperson gave the court an incomplete verdict form and made a confusing statement about being "locked on the firearm." The court instructed the jury to continue with deliberations, and soon afterwards the jury returned a verdict that remained locked on the possession of a firearm charge but was unanimous on the questions of possession of ammunition and drugs. The jury foreperson subsequently announced that the jury found Brown guilty of possessing a firearm or ammunition by a felon, but acquitted him on the drug possession charge.

Brown made a post-trial motion for acquittal or, alternatively, for a new trial, making some of the same arguments now presented to this Court for review. The district court denied Brown's motions and sentenced him to thirty-three months imprisonment followed by two years of supervised release. This appeal timely followed.

II.

Brown advances three arguments in support of his contention that the district court issued an erroneous jury instruction at his trial. We consider each below.

A. *Instruction Unsupported by Evidence Presented*

Brown's first argument is that the government's evidence did not support the district court's jury instruction, as all evidence presented concerned a loaded weapon and this

precluded a finding that Brown possessed ammunition separate from a weapon.  While Brown does not argue that a jury verdict may be struck down for being inconsistent, he argues that a trial court must take steps to avoid such an inconsistent verdict. Brown cites *Joy v. Bell Helicopter Textron*, 999 F.2d 549, 556 (D.C. Cir. 1993), for the proposition that a trial judge's instructions to jurors must be "on the dictates of the law as made applicable by the evidence presented in the particular case."  As additional support for this argument, Brown cites *Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d 523, 528 (8th Cir. 1980), for the proposition that it is reversible error to submit to the jury an issue as to which there is no evidence; and *United States v. Payne*, 805 F.2d 1062, 1067 (D.C. Cir. 1986), for the related proposition that a court does not err by refusing to give a lesser included offense instruction when the evidence provides no rational basis for convicting defendant of the lesser offense. Brown argues that since the government's evidence all pointed to a loaded gun, the district court erred by failing to inform the jury that it could only find Brown guilty of possessing a firearm *and* ammunition because the evidence presented by the government did not support a separate finding of guilt on the possession of ammunition alone.

We are not persuaded by this argument.  True, it is proper for a trial court to refuse to submit to the jury a count on which the government has failed to present any evidence that would allow a rational juror to find guilt beyond a reasonable doubt, *see, e.g., Bartak*, 629 F.2d at 528, but this is not such a case. Brown challenges neither the admissibility of the .45 caliber ammunition the government entered into evidence nor the testimony at trial linking that ammunition to him.  Since this evidence supported a guilty finding on the charge of possession of ammunition, the district court properly instructed the jury that it could conclude that Brown possessed ammunition in violation of 18 U.S.C. § 922(g)(1).

As Brown concedes, the fact that a jury comes to a factually inconsistent verdict is not, by itself, grounds for reversal. *See Dunn v. United States*, 284 U.S. 390, 393 (1932); *United States v. Campbell*, 684 F.2d 141, 151-52 (D.C. Cir. 1982) (addressing compromise verdicts). In *Dunn*, the Supreme Court "held that a criminal defendant convicted by a jury on one count could not attack that conviction because it was inconsistent with the jury's verdict of acquittal on another count." *United States v. Powell*, 469 U.S. 57, 58 (1984). This is so because inconsistent verdicts may well be nothing more than "a demonstration of the jury's leniency." *Id.* at 61. This rationale is equally applicable where a single count alleges two methods of committing a violation as where the two methods are separated into two separate counts. In any event, in the present case, the alleged inconsistency is not completely unexplainable. The caliber of the pistol seized from Brown's vehicle was in dispute during the trial, and some jurors may have retained doubt over whether the pistol entered into evidence was the same one seized from Brown's vehicle. All jurors determined beyond reasonable doubt that the ammunition admitted at trial was Brown's. Given that the statute and indictment only required the jury to find that Brown possessed the ammunition in order to find him guilty of the crime, it was permissible for the jury to decide to stop deliberating at that point and render its verdict. Thus, we see no reason to disturb the conviction on this ground.

## B. Constructive Amendment

Brown's second argument is that, by instructing the jury that it could find him guilty of either possessing the weapon "or" the ammunition, the district court constructively amended the indictment. Brown cites *Stirone v. United States*, 361 U.S. 212, 215-16 (1960), for the proposition that "after an indictment has been returned[,] its charges may not be broadened through amendment except by the grand jury itself." Since the

indictment charged Brown with possession of a firearm "and" ammunition, he urges that changing the jury instruction to allow the jury to find him guilty of possessing either the firearm or the ammunition broadened his potential basis of criminal liability beyond the bounds of the original indictment.

Brown cites two Eleventh Circuit cases as support for his argument. In *United States v. Narog*, 372 F.3d 1243, 1249-50 (11th Cir. 2004), the district court responded to a jury question about the requirements of finding a defendant guilty by relying on the text of the criminal code rather than the specific charge found in the indictment; the resulting conviction was subsequently reversed by the Eleventh Circuit. That circuit reasoned that the government had charged a subset of the statutory crime, and that it must be held to prove what it had charged. *Id.* Similarly, in *United States v. Weissman*, 899 F.2d 1111, 1116 (11th Cir. 1990), the same court concluded that a district court's jury instructions "altered an essential element of the crime charged" in light of the government's evidence in the case.

These two cases are inapposite, however, as both merely stand for the proposition that a defendant may not be found guilty of a specific crime for which he was not indicted. In *Narog*, the government had specifically charged the defendant with possession and distribution of pseudoephedrine knowing that it would be used to manufacture methamphetamine. *Narog*, 372 F.3d at 1246. There, the court responded to a jury question on the *mens rea* requirement by stating simply that the government needed to prove "that the pseudoephedrine would be used to manufacture some controlled substance," rather than instructing that the jury could find guilt only if it found that the defendant knew the pseudoephedrine would be used to manufacture methamphetamine as the indictment specified. *Id.* at 1247. Similarly, in *Weissman*, the district court supplemented

its jury instruction in a way that permitted the jury to find the defendant guilty of a RICO conspiracy other than the one specified in the indictment. *Weissman*, 899 F.2d at 1112. The *Weissman* indictment had specifically charged the defendants with a conspiracy committed while they were associated with an enterprise defined as coextensive with a certain crime family. *Id.* During jury deliberations, the jury asked the court whether the crime family and the term "enterprise" must be construed as one and the same. The district court responded that the jury did not need to find that the defendants were associated with the particular crime family, only with an "enterprise" as the court had earlier defined that term. *Id.* at 1113. The Eleventh Circuit found that this created the possibility "that appellants were convicted on grounds not charged in the indictment." *Id.* at 1112.

Unlike those two cases in which the district courts issued jury instructions which could have permitted a guilty finding on an unindicted charge, Brown was specifically indicted for both possession of a Hi-Point .45 caliber semi-automatic pistol and for possession of .45 caliber ammunition. Therefore, the court's instruction that they could find Brown guilty for possession of either injected no possibility of conviction of an offense not alleged in the indictment.

In any case, it is well established that if a criminal statute disjunctively lists multiple acts which constitute violations, "the prosecution may in a single count of an indictment or information charge several or all of such acts in the conjunctive and under such charge make proof of any one or more of the acts, proof of one alone, however, being sufficient to support a conviction." *District of Columbia v. Hunt*, 163 F.2d 833, 837-38 (D.C. Cir. 1947) (citing *Crain v. United States*, 162 U.S. 625 (1896)). Thus, it was no error for the government to seek a conjunctively worded indictment and then ultimately secure a

conviction on proof of one act alone. We find no constructive amendment of the indictment in this case.

*C. Effective Bifurcation of Charge*

Brown's final argument is that, in contravention of circuit precedent, the district court's disjunctive jury instruction effectively treated the firearm and the ammunition it contained as two separate offenses. In *United States v. Clark*, 184 F.3d 858, 871-72 (D.C. Cir. 1999), this Court held that "possession of a loaded weapon constitutes a single offense" under 18 U.S.C. § 922(g)(1), and reversed one of two convictions a jury had returned when it found a defendant guilty of possessing a loaded firearm in violation of that statute. Brown argues that, in function, the district court here bifurcated the charge when it allowed the disjunctive instruction and repeatedly referred to possession of the firearm and possession of ammunition as separate "counts" when discussing the charges. Brown asserts that the court gave the jury the impression that a loaded weapon constituted more than one offense and thereby violated this Court's precedent.

We disagree. In *Clark*, the fundamental issue was not a court's implicit division of possession of ammunition and possession of a firearm into separate counts, but an *actual indictment and conviction* on two separate counts of violating 18 U.S.C. § 922(g)(1) for possession of a single loaded firearm. *Clark*'s defendant was indicted for two counts of violating § 922(g)(1): one count for possessing a firearm and a second count for possessing the ammunition inside. *Id.* at 862-63. While not even discussed specifically, to the extent that *Clark*'s jury instruction was flawed for permitting such a double conviction, the flaw resulted from the improper indictment. *Clark* involved two separate counts of conviction, but does not speak to the issue of whether the two grounds within a single count need to

be charged with a conjunctive "and" or can be charged with a disjunctive "or." Here, Brown was indicted for one violation of § 922(g)(1), and we reject his argument that the district court's discussion of two possibilities for violating that statute as separate "counts" rises to the same level as the *Clark* district court's permission of separate convictions for a single violation of § 922(g)(1).

The English language lacks a precise, simple term that courts may use to refer to each act in a disjunctively phrased criminal statute, so the district court's slight lapse in referring to each of the two elements as "counts" is understandable. But, more importantly, we fail to see that use of this terminology led to jury confusion about the nature of the crime with which Brown was charged—specifically on the question of whether the two acts constituted separate substantive counts of violating § 922(g)(1). The verdict form the court submitted to the jury clearly showed the members that they could find Brown guilty of violating the statute either by finding that he unlawfully possessed a firearm, unlawfully possessed ammunition, or both. The jury correctly completed the form by marking that it unanimously found Brown guilty by reason of his possession of ammunition while reflecting that it came to no conclusion on the question of his possession of a firearm option by leaving that space blank. We see no evidence that they considered the two questions as belonging to separate offenses.

Finally, while Brown argues that the "court even went so far as to send the jury back to deliberate further when the verdict form was blank with respect to the firearm portion of Count I" in support of his argument that the court implied to the jury that the two elements were distinct substantive counts, the record shows that the district court sent the jury back to deliberate primarily because the foreperson appeared confused about what the jury had actually decided on this count. In any case, when

the jury subsequently returned and presented a coherent oral verdict, the court accepted its verdict form with the firearm possession section left blank. This demonstrates both that the district court did not require the jury to return verdicts on both acts and that the jury correctly understood that arriving at such a verdict was not required to find the defendant guilty on that count.

## III.

For the reasons set forth above, appellant's conviction is

*Affirmed.*