UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 07-4727
(5:06-cr-00082-FL)


UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

DERRICK JOMELL PERRY, a/k/a Mel,

                    Defendant - Appellant.


O R D E R


     The court amends its opinion filed March 23, 2009, as follows:

     On page 13, last paragraph, line 3, "marijuana-trafficking" is corrected to read "cocaine-trafficking."


                              For the Court - By Direction


                                 /s/ Patricia S. Connor
                                        Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DERRICK JOMELL PERRY, a/k/a Mel,

*Defendant-Appellant.*

No. 07-4727

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Louise W. Flanagan, Chief District Judge.
(5:06-cr-00082-FL)

Argued: December 5, 2008

Decided: March 23, 2009

Before TRAXLER and AGEE, Circuit Judges, and Rebecca
Beach SMITH, United States District Judge for the Eastern
District of Virginia, sitting by designation.

Affirmed in part; vacated and remanded in part by published
opinion. Judge Traxler wrote the opinion, in which Judge
Agee and Judge Smith joined.

## COUNSEL

**ARGUED**: Rudolph Alexander Ashton, III, MCCOTTER,
ASHTON & SMITH, P.A., New Bern, North Carolina, for

Appellant. Banumathi Rangarajan, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** George E. B. Holding, United States Attorney, Anne M. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

## OPINION

TRAXLER, Circuit Judge:

Derrick Jomell Perry appeals his convictions and sentences for distribution of crack cocaine, possession with intent to distribute marijuana, and possession of a firearm during and in relation to a drug trafficking crime. We affirm Perry's convictions, but vacate the sentence and remand for resentencing.

I.

In May 2004, the Franklin County Sheriff's Department, working in cooperation with other law enforcement agencies, obtained a search warrant for Perry's Louisburg, North Carolina house and surrounding area, after receiving information from a reliable informant that the informant had personally observed cocaine and crack cocaine being prepared and sold there. Immediately prior to executing the warrant, two Franklin County officers conducted visual surveillance of Perry's house, a three-bedroom, double-wide mobile home. Over the course of approximately three hours, the officers observed ten cars being driven to the back of the house. Each car stayed no more than ten minutes. The officers observed Perry walking out of the house, into the woods, and back to the house. This activity was considered to be consistent with drug distribution.

During the ensuing search of Perry's house, officers found a small amount of marijuana in a jar in the kitchen and a brick

of marijuana weighing approximately 373.5 grams, an amount consistent with distribution, in the kitchen island. Drug paraphernalia, including a set of digital scales, a cutting agent, and a crystal scanner, were also found in the kitchen. In the master bedroom, officers found two pipes containing marijuana residue on the night stand and a set of digital scales on the dresser. A loaded SKS assault rifle and .25 caliber semiautomatic pistol were found in the master bedroom closet. A .38 caliber revolver with ammunition was also found in the master bedroom. Officers also discovered that Perry's house was equipped with a television surveillance system. Cameras on the front and back corners of the house allowed Perry to see vehicles as they entered his driveway and traveled to the back of the house. In the woods next to the house, officers found a bucket containing 73.9 grams of powder cocaine, also an amount consistent with distribution, and an additional quantity of marijuana.

In May and June of 2005, SBI Agent Timothy Gay and Franklin County law enforcement officers arranged for a different informant to make three purchases of crack cocaine from Perry as follows: 26.1 grams on May 5, 2005; 5.8 grams on May 18, 2005, and 52.9 grams on June 9, 2005. At trial, the informant testified that he had purchased crack, powder cocaine, and marijuana from Perry over the course of four years, both at Perry's house and at his place of business.

Perry was subsequently indicted on two counts of distribution of more than five grams of crack cocaine, in violation of 21 U.S.C.A. § 841(a)(1) (West 1999), arising from the controlled buys on May 5, 2005 (Count 1) and May 18, 2005 (Count 2), and one count of distribution of more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1), arising from the controlled buy on June 9, 2005 (Count 3). Three additional counts arose out of the search of Perry's house in May 2004. Perry was indicted on one count (Count 4) of possession with intent to distribute a quantity of cocaine in violation of 21 U.S.C. §  841(a)(1), one count (Count 5) of

possession with intent to distribute a quantity of marijuana, in violation of 21 U.S.C. § 841(a)(1), and one count (Count 6) of possessing firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (West Supp. 2008).

Prior to trial, Perry moved to suppress evidence of the marijuana and firearms found in his house during the search, as well as incriminating statements he made to officers that day. The district court denied the motion. At the conclusion of the government's case, Perry moved for a judgment of acquittal with respect to Count 6 on the ground that there was insufficient evidence that he possessed the firearms in furtherance of any drug trafficking crime. The district court denied this motion as well.

The jury found Perry guilty of the controlled buy on May 18, 2005 (Count 2), but acquitted Perry of the remaining two controlled buys (Counts 1 and 3). The jury also convicted Perry of possession with intent to distribute the marijuana found in May 2004 (Count 5), and of possession of a firearm in furtherance of a drug trafficking crime (Count 6). However, the jury acquitted Perry of possession with intent to distribute the cocaine found in May 2004 (Count 4). Perry was sentenced to concurrent 170-month sentences on Counts 2 and 5, a consecutive 60-month sentence on Count 6, and a five-year term of supervised release.

## II.

On appeal, Perry first challenges the district court's denial of his motion to suppress the marijuana and firearms found during the search of his house, as well as the incriminating statements he made that same day. On appeal from the district court's denial of such a motion, we review the district court's factual findings for clear error and its legal determinations de novo. *See United States v. Kimbrough*, 477 F.3d 144, 147 (4th

Cir. 2007); *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005).

A.

We begin with Perry's challenge to the district court's refusal to suppress the marijuana and firearms found during the search of his house, in which Perry contends that the search warrant failed to describe the items to be seized with sufficient particularity and that there was insufficient probable cause to search for and seize those items

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The requirement that the warrant describe with particularity the items to be seized ensures that persons are not subjected to "a general, exploratory rummaging in [their personal] belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). "The magistrate issuing the search warrant must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 273 (4th Cir. 2004) (internal quotation marks and ellipsis omitted).

In the instant case, a reliable, confidential informant personally observed crack cocaine and powder cocaine being prepared and sold at Perry's house. In addition, Perry had an established reputation as a drug dealer in Franklin County. Based upon this information, Detective William Mitchell of the Franklin County Sheriff's Office requested a search warrant, proposing as items to be seized, *inter alia*, "US coins and currency, proceeds from the sale and delivery of controlled substances, *[c]rack [c]ocaine and other controlled substances*, scales and measuring devices, . . . drug paraphernalia, . . . *firearms and weapons*, . . . and fruits of the crimes listed

in this application." J.A. 45 (emphasis added). The application listed as crimes Perry's possession with intent to sell and deliver cocaine and the maintenance of a dwelling to keep, sell, and store controlled substances. The detective also noted that, based on his training and experience, "drug traffickers typically possess numerous firearms and weapons for protection from other dealers, robbery from users, and from arrest for their criminal activities." J.A. 45. The warrant, as issued, authorized the seizure as requested, including "[c]rack [c]ocaine and other controlled substances," as well as "firearms and weapons." J.A. 45.

Like the district court, we conclude that the warrant was sufficiently particular to cover the marijuana, a "controlled substance[ ]," as well as the "firearms and weapons" found in the house. The seizure of the drugs and firearms was also supported by probable cause. Although the informant did not personally observe marijuana or firearms in the house, the informant's observation of cocaine being prepared and sold at the house, as well as the well-known and attested-to link between drug distribution and firearms, gave the officers probable cause to search for such controlled substances and firearms. *See United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999) ("Guns are tools of the drug trade and are commonly recognized articles of narcotics paraphernalia."). In addition, the marijuana and firearms were found in the place where the cocaine and crack had been seen by the informant and, therefore, in a place where the officers unquestionably had probable cause to search. Accordingly, we affirm the district court's denial of Perry's motion to suppress the marijuana and firearms found during the search of his house.

## B.

Perry also challenges the district court's denial of his motion to suppress several incriminating statements he made to the Franklin County officers on the day of the search.

During the search, Detective Mitchell asked Louisburg city police officers to go to Perry's place of business and ask Perry to return to the house while it was being searched by the Franklin County officers. Chief Lassiter and Captain Abbott of the Louisburg Police Department traveled to Perry's place of business near the end of the workday in plain clothes and an unmarked vehicle. Chief Lassiter went inside and asked to speak to Perry. Perry knew Chief Lassiter and asked him if he would wait for Perry to close up the business. Chief Lassiter agreed and the officers waited outside for Perry to finish his work. When Perry came outside, Captain Abbott told Perry that Detective Mitchell had "requested that [he] come out to the house." J.A. 90. Perry agreed and got into the front passenger seat of the unmarked vehicle. Perry was not handcuffed or otherwise restrained in any way. The three men then drove to the house.

After they arrived, Perry remained unrestrained in the front seat of the vehicle with the Louisburg police officers. However, when the searching officers found the cocaine in the woods, the Franklin County officers took Perry into custody.[1] At this point, Perry was handcuffed and placed in the back of a Franklin County patrol vehicle. Perry was visibly upset and crying, and spontaneously asked Detective Strickland, "[H]ow come you didn't warn me? I would have stopped." J.A. 271.[2]

Perry was then transported to the Franklin County Sheriff's Department where he was advised of his *Miranda* rights and interviewed by two detectives. Perry executed a written waiver of his rights, agreed to speak to the detectives, and

---

[1]For the safety of the officers during the search, several persons who were either at the house when the search began or who arrived at the house during the search were temporarily handcuffed to a trampoline. However, it is undisputed that Perry was not arrested or otherwise restrained until after the cocaine was found.

[2]Although it is not entirely clear, Perry apparently believed that Detective Strickland was related to him by marriage.

prepared a handwritten statement. Perry admitted to selling marijuana, but told the detectives he had only done so occasionally to supplement his family's income and pay bills for his children. He also provided details about his drug supplier and deliveryman, and he admitted that the drugs found at his house were purchased from his supplier. In his written statement, Perry again admitted selling drugs, including a "small amount of powder." J.A. 48.

At the suppression hearing, Perry testified that the Louisburg police officers arrived at his place of business and instructed him to get in the front passenger seat. He testified that he thought they were just going to talk, but the officers drove off instead. Perry testified that when he asked where they were going, he was told they had been instructed to bring Perry to the house. Perry testified that he felt like he was in custody at that point. He also testified that he felt threatened when, after their arrival at the house, he asked to go to the bathroom and a Franklin County officer participating in the search outside the vehicle made a remark about hunting. In addition to his own testimony, Perry relies upon an incident report of the search prepared by Detective Mitchell, which stated that "[t]he Louisburg Police took the target into custody and transported him back to his residence." J.A. 112 (internal quotation marks omitted). However, the report also stated that Perry was not arrested by the Franklin County officer until after the cocaine was found.

A "seizure" for purposes of the Fourth Amendment occurs when, under the totality of the circumstances, a reasonable person in the suspect's position "would not feel free to leave or otherwise terminate the encounter." *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002).

> Circumstances where the citizen would feel free to go, but stays and has a dialogue with the officer, are considered consensual, and therefore do not implicate the Fourth Amendment. While most citizens

will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response. In applying the totality of the circumstances test, courts look to numerous factors including the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the officer's statements to others present during the encounter, the threatening presence of several officers, the potential display of a weapon by an officer, and the physical touching by the police of the citizen.

*Id.* at 309-10 (internal quotation marks and citation omitted).

At the suppression hearing, Perry acknowledged that the Louisburg officers asked to speak to him and waited outside for him to complete his work. He also acknowledged that the officers were in plain clothes and in an unmarked vehicle, and that they never displayed weapons, handcuffed him, or otherwise restrained him. He also admits that he voluntarily got into the vehicle with the officers. However, he asserts that he was seized without a warrant and without probable cause when the officers drove away from his place of business and to his house and that this illegal seizure continued while he waited in the vehicle during the search. This assertedly illegal seizure, Perry contends, tainted the statement he allegedly made to Officer Strickland at the house after he was taken into custody by the Franklin County officers, as well as the confessions he made to the detectives after he was advised of his *Miranda* rights.

At the conclusion of the suppression hearing, the district court found that the encounter between the Louisburg officers and Perry was "something along the lines . . . of an invitation to come outside to talk with the officers [and] that [Perry] got into the car at the suggestion or request of the police officers." J.A. 166. The district court also found "nothing that suggests

[Perry] was held against his will in the car, and . . . certainly nothing on the record to suggest that he was the subject of any questioning" prior to his being given his *Miranda* warnings. J.A. 167. Accordingly, the district court denied the motion to suppress the spontaneous utterance as well as the post-*Miranda* confessions.

We cannot say that the district court's findings are clearly erroneous or that its denial of Perry's motion to suppress was erroneous as a matter of law. The district court found that Perry was not seized at his place of business or otherwise prior to the execution of the search warrant. The Louisburg officers were not in uniform and they were traveling in an unmarked vehicle. They waited outside for Perry to close up his business, asked him to accompany them to the house, and never displayed a weapon or otherwise restrained him in any fashion. After Perry acceded to the officers' request and traveled to the house, he continued to remain voluntarily in the vehicle unrestrained. Although Perry asserts that he felt threatened by a Franklin County officer when he asked to go to the restroom, there is no evidence that he was denied this request by the Louisburg officers or the Franklin County officer. It is also clear, and indeed undisputed, that Perry was never subjected to any pre-arrest interrogation by either the Louisburg officers or the Franklin County officers. Perry's first incriminating statement was made spontaneously to Detective Strickland *after* the cocaine was found by the Franklin County officers and *after* he was taken into custody and handcuffed by them. The remainder of the incriminating statements occurred after he was arrested and after he was given and waived his *Miranda* rights. Accordingly, we affirm the district court's denial of Perry's motion to suppress his statements.

## III.

### A.

Perry next contends that the district court erred in denying his motion for acquittal on Count 6, the § 924(c) firearm

count, because there was insufficient evidence that the fire-arms found in the house were possessed in furtherance of a drug trafficking crime. We disagree.

The indictment charged that Perry "knowingly possessed firearms, that is, an SKS 7.62mm rifle, a .38 caliber revolver, and a Raven Arms .25 caliber pistol, in furtherance of a drug-trafficking crime for which he may be prosecuted in a court of the United States, to wit, possession with the intent to distribute cocaine and marijuana." J.A. 18-19. In order to prove the § 924(c) violation, the government was required "to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime. However, whether the firearm served such a purpose is ultimately a factual question." *See United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). Factors that the jury may consider include: "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* (internal quotation marks omitted). We must affirm the jury's verdict against a sufficiency challenge "if there is substantial evidence, taking the view most favorable to the Government, to support [it]." *United States v. Moye*, 454 F.3d 390, 394 (4th Cir. 2006) (en banc) (quoting *Glasser v. United States*, 315 U.S. 60, 80 (1942)).

We conclude that there was substantial evidence to support the jury's determination that Perry possessed a firearm to further, advance, or help forward his drug trafficking activities. The officers who conducted surveillance of Perry's house on the day of the search observed at least ten cars come to the house, travel to the back of the house, and stay no more than ten minutes. The house was equipped with a television surveillance system that allowed Perry to observe such traffic from inside the house. The house itself was a relatively small, double-wide trailer with three bedrooms.

The quantity of the marijuana and drug paraphernalia found in the kitchen was consistent with drug trafficking, as was the drug paraphernalia and firearms found in the master bedroom. At least one of the firearms in the bedroom was loaded and in close proximity to drug paraphernalia, and the firearms were easily accessible in the event needed, particularly given the fact that the outside perimeter of the house was under video surveillance from the inside of the house. And, of course, both the firearms and the surveillance system are highly indicative of a drug dealer's attempts to protect his business dealings. Given the testimony and other evidence presented at trial, we conclude that a rational trier of fact could have found the essential elements of the § 924(c) offense beyond a reasonable doubt.

## B.

Perry next contends that the § 924(c) count was constructively amended by the jury's verdict, rendering his conviction invalid under the Fifth Amendment.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury. . . ." U.S. Const. Amend. V. After the indictment is "returned[,] its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 216 (1960). Thus, the "court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Id.* at 217. "A constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury." *United States v. Floresca*, 38 F.3d 706, 710 (4th Cir. 1994) (en banc). Constructive amendments of an indictment are regarded "as fatal variances because 'the indictment is altered to change the elements of the offense charged, such

that the defendant is actually convicted of a crime other than that charged in the indictment.'" *United States v. Foster*, 507 F.3d 233, 242 (4th Cir. 2007) (quoting *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999)).

Here, Perry was charged with having "knowingly possessed [the three] firearms in furtherance of a drug-trafficking crime . . ., to wit, possession with intent to distribute a quantity of cocaine *and* marijuana." J.A. 18-19 (emphasis added). At trial, however, the jury was instructed that it could convict if it found (1) "that the defendant committed a drug-trafficking offense charged in Count 4 [cocaine trafficking] *or* Count 5 [marijuana trafficking] of the indictment;" (2) that the defendant knowingly possessed one of the three firearms listed in the indictment; and (3) "that the defendant did so in furtherance of a drug-trafficking crime charged in Count 4 *or* Count 5 in the indictment." J.A. 609 (emphasis added). In other words, the jury was instructed that it could convict Perry of the § 924(c) count so long as it found that Perry knowingly possessed a firearm in furtherance of *either* of the drug-trafficking crimes charged in Count 4 *or* Count 5. The jury then convicted Perry of the Count 5 offense but acquitted him of the Count 4 offense.

Although Perry styles his argument as one of constructive amendment of the indictment by the jury's acquittal on the cocaine-trafficking offense set forth in Count 4, we construe his claim to be that the district court constructively amended the indictment by instructing the jury in the disjunctive as to the predicate offenses, *i.e.*, that it could convict so long as it found that Perry knowingly possessed a firearm in furtherance of *either* the drug-trafficking offense committed as charged in Count 4 *or* the one committed as charged in Count 5 of the indictment. This instruction, in turn, allowed the jury to convict on the § 924(c) count based upon a single predicate offense of marijuana trafficking. This instruction, however, did not result in a constructive amendment of the indictment.

It is well established that when the Government charges in the conjunctive, and the statute is worded in the disjunctive, the district court can instruct the jury in the disjunctive. *See United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir. 2001); *United States v. Champion*, 387 F.2d 561, 563 n.6 (4th Cir. 1967) (providing that an indictment worded conjunctively under a statute which uses disjunctive language may be disjunctively considered by the jury and that proof on any one of the allegations is sufficient to sustain a conviction); *see also United States v. Farish*, 535 F.3d 815, 823-24 (8th Cir. 2008) (holding that it was not a constructive amendment for the government to indict in the conjunctive, but secure a conviction on proof of one act alone); *United States v. Brown*, 504 F.3d 99, 104 (D.C. Cir. 2007) (same).

The same holds true in the instant case. The indictment charged both predicate offenses, placing Perry on notice of the specific charges against him. However, the § 924(c) count was not dependent upon the jury finding Perry guilty of *both* predicate offenses. In order to convict Perry of a § 924(c) crime, the government was only required to prove that Perry possessed a firearm in furtherance of a single drug-trafficking offense, and the district court properly instructed the jury to this effect. The instruction did not broaden the possible bases for conviction beyond those presented in the indictment, nor change the elements of the offense charged so as to result in Perry being convicted of a crime different from that charged in the indictment.[3] Accordingly, the district court's disjunctive

---

[3]Despite Perry's claim, our decision in *United States v. Randall*, 171 F.3d 195 (4th Cir. 1999), is not to the contrary. There, we found a constructive amendment where the indictment charged that the defendant carried a gun while distributing illegal drugs, but the jury was instructed that it could convict if it found that the defendant carried a gun based upon the *uncharged predicate offense* of possession with intent to distribute. *See id.* at 210. We held that the government does not have to specify a predicate offense, but if it does, it must prove the predicate offense. Unlike here, however, the predicate offense which served as the basis for the conviction in *Randall* was not charged in the indictment. *Id.*

instruction as to the predicate offenses did not result in a constructive amendment of the indictment as to the § 924(c) count.

## C.

Perry's final challenge to his § 924(c) conviction is that the district court erred in instructing the jury in the disjunctive on both the firearms *and* the predicate offenses, and in not requiring the jury to be unanimous as to which firearm supported the § 924(c) conviction.

Prior to submission of the case to the jury, the district court rejected Perry's request that the jury be instructed that it must find that Perry knowingly possessed *all* three firearms in furtherance of *both* drug-trafficking offenses set forth in Counts 4 and 5. Instead, the district court effectively instructed the jury that it need only find that Perry knowingly possessed one of the firearms in furtherance of one of the drug-trafficking offenses charged in Count 4 or Count 5.

As previously noted, the general rule is that the district court can instruct the jury in the disjunctive when the government charges in the conjunctive and, therefore, it was not error for the district court to charge the jury in the disjunctive as to the predicate offenses. It was likewise not error for the district court to charge the jury in the disjunctive as to the firearms allegedly possessed in furtherance of those predicate offenses. Additionally, where the charge involves multiple firearms, jury unanimity with respect to the particular firearm used or possessed in furtherance of a drug trafficking offense is generally not required for a § 924(c) conviction. *See United States v. Hernandez-Albino*, 177 F.3d 33, 40 (1st Cir. 1999) (holding that "the jury need not reach unanimous agreement on the identity of the weapon when the defendant is charged with violating § 924(c) due to carrying more than one firearm," so long as "none of the weapons justifies more than the statutory minimum sentence"); *United States v. Morin*, 33

F.3d 1351, 1353-54 (11th Cir. 1994) ("[T]o obtain a conviction under 18 U.S.C. § 924(c), the government needs to prove only that the defendant used one of the guns in relation to the drug trafficking" and "the jury is not required to reach a unanimous verdict as to which gun the defendant used."); *United States v. Correa-Ventura*, 6 F.3d 1070, 1087 (5th Cir. 1993) (noting that "such determinations must be made on a case-by-case basis in light of the charges made, the evidence presented, and the likelihood of jury confusion," but holding that "a specific unanimity instruction was not required with respect to the identity of the firearm" at issue there).[4]

Perry's unanimity claim, however, is not limited to his claim that the jury should have been required to reach unanimity as to the specific firearm possessed for purposes of the § 924(c) charge. Rather, he contends that because the district court charged the jury in the disjunctive as to *both* the fire-

---

[4]Perry's reliance upon *United States v. Cappas*, 29 F.3d 1187 (7th Cir. 1994), for this point does not avail him. In *Cappas*, the Seventh Circuit held that a § 924(c) conviction is based upon the predicate offense, and not a particular gun. *See id.* at 1189. Because the court could not discern whether the defendant had been convicted multiple times for the *same* predicate offense, the district court dismissed the additional § 924(c) charges and upheld only one § 924(c) conviction. *See id.* at 1195. *Cappas* does not hold that the jury must be unanimous as to which firearm or firearms were possessed in furtherance of a single predicate offense. Perry's reliance upon *United States v. Theodoropoulos*, 866 F.2d 587 (3d Cir. 1989) (overruled on other grounds), is also misplaced. In *Theodoropoulos*, the Third Circuit noted that the trial judge had "properly instructed the jury that they must unanimously agree on which weapon [the defendant] had used." *Id.* at 597. However, the court determined that only one of the four guns at issue *could* support the § 924(c) conviction as a matter of law and there was no way to determine which gun the jury had relied upon. *See id.* at 598. Recently, in *United States v. Wise*, 515 F.3d 207, 215 (3d Cir. 2008), the court clarified that *Theodoropoulos* did not hold "that such an instruction is required in every case." On the contrary, the court, relying upon the precedents discussed above, held that "the jury was *not* required to unanimously agree on the type of weapon [defendant] possessed, because a specific firearm is *not* an element of a violation under 18 U.S.C. § 924(c)(1)(A)." *Id.* at 214 (emphasis added).

arms *and* the two predicate drug-trafficking offenses, it is impossible to tell if the jury unanimously found that he possessed a firearm in furtherance of any particular drug trafficking crime. In other words, endorsing such a multiple, disjunctive instruction would amount to a determination that the government can charge multiple firearms and multiple predicate offenses in a single count, but that juror unanimity is not required for either the firearm possessed or the predicate offense it is possessed in furtherance of in order to convict.

Although Perry's argument in this regard has some initial appeal to us, we need not decide the issue here because Perry was not convicted of the cocaine-trafficking offense set forth in Count 4. He was only convicted of one drug offense— possession with intent to distribute marijuana.

The jury was instructed that to convict on the § 924(c) count it had to find that Perry "committed a drug-trafficking offense charged in Count 4 *or* Count 5," and that Perry "possessed a firearm . . . in furtherance of a drug-trafficking crime charged in Count 4 *or* Count 5." J.A. 609 (emphasis added). The evidence was that all three firearms were found in the same general location and at the same time. The predicate offenses were charged in two separate drug-distribution counts, but the single § 924(c) count incorporated both predicate offenses. Because the jury only convicted Perry of Count 5 (marijuana-trafficking), and acquitted Perry of Count 4 (cocaine-trafficking), it is easy to see that the marijuana-trafficking offense also served as the sole predicate offense for the single § 924(c) conviction.

Because juror unanimity was not required as to the specific firearm possessed and the jury unanimously convicted Perry only of the marijuana-trafficking offense, there is no possibility of jury disagreement creating "a reasonable doubt that [the defendant] used a firearm in committing a drug trafficking

crime." *Correa-Ventura*, 6 F.3d at 1083.[5] Accordingly, even assuming that the district court should have required jury unanimity as to the predicate offense, the error was harmless.

## IV.

Perry next contends that we should vacate and remand for resentencing because the district court included drug amounts related to acquitted conduct in the computation of the drug amounts for purposes of sentencing, arguing that the inclusion of these amounts resulted in a base offense level of 32 instead of 26. We disagree.

It has long been established that sentencing courts may consider acquitted conduct in establishing drug amounts for the purpose of sentencing, so long as the amounts are established by a preponderance of the evidence. *See United States v. Watts*, 519 U.S. 148, 155-56 (1997) (per curiam); *see also United States v. Carter*, 300 F.3d 415, 426 (4th Cir. 2002) (per curiam). And, we reject Perry's assertion that this point is no longer valid in light of *United States v. Booker*, 543 U.S. 220 (2005), as sentencing courts continue to make factual findings concerning sentencing factors, such as relevant conduct, by a preponderance of the evidence. *See United States v. Brika*, 487 F.3d 450, 459 (6th Cir. 2007); *see also United States v. Duncan*, 400 F.3d 1297, 1304-05 (11th Cir. 2005) (holding that *Booker* "does not suggest that the consideration of acquitted conduct violates the Sixth Amendment as long as the judge does not impose a sentence that exceeds what is authorized by the jury verdict" and instead "sentencing judges

---

[5]In contrast, we can envision a scenario where § 924(c) counts alleging multiple firearms are not separately charged by the predicate offense, the jury is not instructed to unanimously agree upon the predicate offense, *and* the jury convicts of more than one predicate offense — leaving the possibility that the jury arrived at a guilty verdict even though the jury members failed to unanimously agree upon either a firearm or the predicate offense that it was possessed in furtherance of. We leave the determination as to whether such a verdict would be proper to another day.

can continue to consider relevant acquitted conduct when applying the Guidelines in an advisory manner"). The district court found, by a preponderance of the evidence, that the drug amounts associated with the acquitted conduct are properly attributable to Perry, and we find no error in its determination.

We also reject Perry's request that we hold his case to be one of exceptional circumstances, warranting the imposition of an elevated clear and convincing evidence standard before acquitted conduct may be considered. *See Watts*, 519 U.S. at 156-57 (acknowledging "divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence," but declining to address the issue because the case did "not present such exceptional circumstances"). Because Perry's asserted six-level increase fails to create an "exceptional circumstance," we find it unnecessary to consider the necessity of a higher standard of proof on this point.

Perry's assertion that the district court erred in failing to consider a variance based upon the 100:1 crack-to-powder ratio, however, has merit. The district court believed it was precluded from considering the request based upon our then-binding precedent. *See United States v. Eura*, 440 F.3d 625, 634 (4th Cir. 2006) (holding that the 100:1 crack to powder cocaine sentencing ratio could not be a basis for a variance). Because *Eura* was overruled by the Supreme Court in *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the parties agree that this case must be remanded for resentencing in light of *Kimbrough*. As a result, it is premature for us to consider Perry's remaining challenge to the district court's denial of his additional requests for a variance below the suggested guideline range.

*AFFIRMED IN PART;*
*VACATED AND REMANDED IN PART*