**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 14-4645

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WENDY ANNETTE MOORE,

Defendant - Appellant.

_____

No. 14-4646

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTOPHER AUSTIN LATHAM,

Defendant - Appellant.

_____

Appeals from the United States District Court for the District of South Carolina, at Charleston. Richard M. Gergel, District Judge. (2:13-cr-00330-RMG-1; 2:13-cr-00330-RMG-5)

_____

Argued: December 10, 2015          Decided: January 20, 2016

_____

Before TRAXLER, Chief Judge, and MOTZ and HARRIS, Circuit Judges.

_____

Affirmed by published opinion. Judge Harris wrote the opinion, in which Chief Judge Traxler and Judge Motz joined.

————————

**ARGUED:** Andrew Mackenzie, BARRETT-MACKENZIE, LLC, Greenville, South Carolina; James Arthur Brown, Jr., LAW OFFICES OF JIM BROWN, PA, Beaufort, South Carolina, for Appellants. Rhett DeHart, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee. **ON BRIEF:** William N. Nettles, United States Attorney, Columbia, South Carolina, Nathan S. Williams, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

PAMELA HARRIS, Circuit Judge:

A jury convicted Wendy Annette Moore and Christopher Austin Latham of participating in a murder-for-hire plot targeting Latham's estranged wife. In this consolidated appeal, Moore and Latham challenge their convictions, arguing that the district court constructively amended the indictment through erroneous jury instructions and improperly admitted hearsay and character evidence. We disagree, and affirm the convictions.

**I.**

**A.**

Viewed in the light most favorable to the government, see United States v. Lentz, 524 F.3d 501, 507 (4th Cir. 2008), the evidence at trial established the following. On April 5, 2013, police officers stopped Aaron Wilkinson as he drove through the city of Charleston, South Carolina. Wilkinson revealed to the police that he and his former prison cellmate, Samuel Yenawine, were involved in a murder-for-hire plot targeting Nancy Latham. The planned murder had not yet occurred.

Investigators later learned that appellants Christopher Latham and Wendy Moore also were involved in the plot. Christopher Latham, a banking executive in Charleston, was in the process of divorcing the targeted victim, Nancy Latham, now known as Nancy Cannon. Moore was Latham's assistant at the

3

bank, as well as his girlfriend. Moore is also the ex-wife of Samuel Yenawine.

Wilkinson explained to the police that a few days before the April 5 stop, Yenawine had suggested to him that they travel together from Louisville, Kentucky to Nashville, Tennessee to buy drugs. Wilkinson agreed, and Yenawine's girlfriend, Rachel Palmer, rented a car for them – the car that Wilkinson was driving when the police stopped him. Once the two men were on the road, Yenawine told Wilkinson that they actually were headed to South Carolina, where Yenawine planned to kill a person he described as a witness in a RICO case.

After arriving in Charleston, Yenawine purchased a pay-as-you-go cell phone and Wilkinson heard him use it to speak to a woman. Yenawine told Wilkinson that the woman would meet them at a hotel in North Charleston and that she would be driving a white 2001 Dodge Durango. Appellant Moore, who drove a white Dodge Durango at the time, arrived at the hotel, and Wilkinson observed Yenawine meet with her. Moore rented a room for Yenawine and Wilkinson, and Yenawine returned from the meeting with $5,000 cash and other items. Yenawine gave Wilkinson $2,500 for himself and another $2,000 to wire to Rachel Palmer in Kentucky.

Wilkinson observed Yenawine meet with Moore a second time in a different location, returning this time with a manila

4

envelope. Investigators determined that the envelope contained a "hit packet" with information related to the plot to murder Nancy Cannon, including printed maps with handwritten notes; personal information about Cannon, her family, her schedule, her vehicle, and her daily routine; and photographs of Cannon, her residence, and one of her daughters.

Investigators later linked the contents of the hit packet to appellants Latham and Moore. The hit packet's photograph of Cannon's house, for instance, was found on Latham's personal cell phone. Handwriting analysis revealed that notes on some of the materials were written by Moore. And the government's evidence connected other contents of the hit packet to activity on Latham's phone and the appellants' office computers and individual office printers.

Investigators also uncovered independent evidence – including cell phone tower evidence and bank records – that further corroborated Wilkinson's story. And the government's evidence suggested that Latham and his parents had provided funds to pay Moore's lawyers, and that Moore and her parents had provided funds to pay Yenawine's lawyer.

Moore, Yenawine, and Wilkinson were arrested in April 2013 and charged with crimes related to the murder-for-hire plot. In June 2013, Yenawine committed suicide in jail.

**B.**

On August 6, 2013, a grand jury returned a superseding indictment against appellants Moore and Latham, as well as Wilkinson and Palmer. In the two counts principally at issue here, the indictment charged Moore and Latham with federal crimes involving murder for hire: Count One charged conspiracy to use interstate commerce facilities in the commission of murder for hire, and Count Three, the use of interstate commerce facilities in the commission of murder for hire, both in violation of 18 U.S.C. § 1958(a). Moore alone was charged in Count Two with solicitation of murder for hire in violation of 18 U.S.C. §§ 373 and 1958, and both appellants were charged in Count Four with illegal firearm possession under 18 U.S.C. § 924(c)(1) and (2).

Moore and Latham were tried before a jury in the District of South Carolina in February of 2014.[1] The jury convicted Moore on all four counts against her. Latham was convicted only on Count Three, with the jury unable to agree on Counts One and Four. The district court declared a mistrial on Counts One and Four as to Latham, and the government later dismissed those charges.

---

[1] Wilkinson pled guilty and Palmer entered a pretrial diversion program.

Latham was sentenced to 120 months in prison, and Moore was sentenced to 180 months.  The district court denied appellants' post-trial motions, and this timely appeal followed.

## II.

Moore and Latham's first contention is that their Fifth Amendment right to indictment by a grand jury was violated when the district court, through its instructions to the jury, constructively amended Counts One and Three of the indictment against them.  According to Moore and Latham, those instructions allowed the jury to convict them under one provision of § 1958(a), which prohibits the use of a "facility" of interstate commerce in connection with a murder for hire, while they were charged only under another, covering "travel" in interstate commerce.  For the reasons discussed below, we disagree.

## A.

We begin with the background principles that govern a claim of constructive amendment.  The Fifth Amendment of the United States Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."  And it is "the exclusive province of the grand jury" to alter or broaden the charges set out in an indictment.  United States v. Whitfield, 695 F.3d 288, 309 (4th Cir. 2012).  Accordingly, it is well

7

established that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." United States v. Floresca, 38 F.3d 706, 711 (4th Cir. 1994) (en banc) (quoting Stirone v. United States, 361 U.S. 212, 217 (1960)).

An impermissible constructive amendment – also referred to as a "fatal variance" – occurs when the government, usually through its presentation of evidence or argument, or the district court, usually through its jury instructions, "broadens the possible bases for conviction beyond those presented by the grand jury." Floresca, 38 F.3d at 710; see also United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999). The key inquiry is whether a defendant has been tried on charges other than those listed in the indictment. United States v. Allmendinger, 706 F.3d 330, 339 (4th Cir. 2013).

Of particular importance here, when a constructive amendment claim rests on allegedly erroneous jury instructions, a reviewing court is to consider the totality of the circumstances – including not only the instructions and the indictment but also the arguments of the parties and the evidence presented at trial – to determine whether a jury could have "reasonably interpreted" the challenged instructions as "license to convict" on an unindicted charge. Lentz, 524 F.3d at 514-15. If not – if a reasonable jury, in light of the full

8

context, would not have thought that it was permitted to convict on a ground not included in the indictment – then no constructive amendment has occurred. Id. at 515-16. Whether, under that standard, appellants' indictment was constructively amended is a question of law that we review de novo. See Whitfield, 695 F.3d at 306.

**B.**

To support federal criminal liability, 18 U.S.C. § 1958(a) enumerates two distinct and alternative jurisdictional elements, or links to interstate commerce. Under the "travel prong," a defendant may be convicted if he or she "travels in or causes another . . . to travel in interstate or foreign commerce" in connection with a murder for hire. Or, alternatively, a defendant may be convicted under the "facilities prong" if he or she "uses or causes another . . . to use the mail or any facility of interstate or foreign commerce." 18 U.S.C. § 1958(a). Under either prong, the government must prove that the defendant's conduct was undertaken "with intent that a murder be committed" for compensation. Id.

In this case, the government charged Moore and Latham only under the travel prong of § 1958(a). Count One of the indictment alleged that Moore and Latham "did knowingly conspire, confederate, agree and have a tacit understanding with each other and with others . . . to travel in, and cause another

9

to travel in, interstate commerce, with the intent that a murder be committed" for compensation. J.A. 41. Likewise, Count Three charged that the appellants, "as principals, aiders and abettors, and as co-participants in jointly undertaken criminal activity, unlawfully and willfully traveled in and caused another to travel in interstate and foreign commerce, to wit, travel between Kentucky and South Carolina, with intent that a murder be committed" for compensation. J.A. 42.

In its closing instructions, the district court first read the indictment to the jury, advising that the appellants were charged under the travel prong in Counts One and Three. But – and here is where the question in this case arises – as it went on to describe § 1958(a), the court made two references to the uncharged facilities prong. Specifically, the court stated:

> To prove a violation of 18 U.S.C. Section 1958(a), the Government must prove a defendant, one, traveled or caused another to travel in interstate commerce [or] use[d], or cause[d] another person to use the mail or any facility in interstate commerce; second, with the intent that a murder be committed; third, as consideration for the receipt or promise to pay anything of pecuniary value.

J.A. 1670-71 (emphasis added); see also J.A. 1672-73. The court also provided the jurors a written copy of its instructions, including the two references to the facilities prong. No party objected.

10

Latham and Moore both filed post-trial motions in which they argued for the first time that the district court had constructively amended the indictment by mentioning the facilities prong in its jury instructions. The district court denied the motions, finding that no constructive amendment had occurred.

## c.

Latham and Moore again urge that the district court constructively amended Counts One and Three of the indictment against them by adverting to the facilities prong of § 1958(a) in its instructions. We acknowledge that in some cases, instructing a jury on the facilities prong when it is not charged in an indictment could constitute a constructive amendment. But under the totality of the circumstances here, including the jury instructions, the verdict form provided to the jury, the arguments of the parties, and the evidence, see Lentz, 524 F.3d at 514–15, we find that the district court's two references to the "use of facilities" did not constitute a constructive amendment.

First, the bulk of the jury instructions properly tracked the indictment and omitted any mention of the facilities prong. The court's opening instructions to the jury described only travel. In its closing instructions, the court read aloud the critical portions of the indictment, which charged only travel,

11

and it expressly cautioned that the appellants were "not on trial for any act or crime not contained in the indictment," J.A. 1665. The court provided a written copy of its accurate summary of the indictment to the jurors, as well as a verdict form that correctly set forth the charges in the indictment. And the court called special attention to the verdict form, instructing the jury to use the verdict form, along with the jury charges, "in a methodical way" to reach its decision. J.A. 1680.

Second, the parties' arguments focused solely on the travel prong. Neither the government nor counsel for Moore ever mentioned "use of facilities" of interstate commerce in opening or closing arguments. The only reference to "facilitating interstate commerce" came from counsel for Latham who, in his closing argument, used that term – but only to describe Wilkinson's <u>travel</u> across state lines. J.A. 1618. And in its closing argument, the government made clear that it was relying on the travel prong: "[W]hat the law requires is travel in interstate commerce, and the judge will tell you driving from Kentucky down to South Carolina covers your interstate commerce. Sounds like a strange term, but really is crossing state lines." J.A. 1554; <u>see</u> <u>also</u> J.A. 1555 (government explaining that "whether you're the one that traveled or whether you assist the people that are traveling . . . you're equally responsible").

12

It is true, as the government acknowledges, that the evidence at trial involved "extensive testimony regarding items that could be considered facilities of interstate commerce – that is, phones and computers." Response Br. at 35 (emphasis in original). But the appellants' use of cell phones and computers to communicate about the plot against Nancy Cannon and to prepare the hit packet was presented as substantive evidence that Latham and Moore were involved in the murder-for-hire plan, not in a way that tied it to the facilities prong of § 1958(a). Indeed, the term "facilities of interstate commerce" was never defined for the jury, and the government never suggested that mere use of technology, independent of its effect on interstate travel, was a basis for convicting the appellants.

In sum, when the jury instructions, the verdict form, and the arguments and evidence presented at trial are viewed in their totality, we find that the jury could not reasonably have concluded that it was free to convict the appellants under the uncharged, undefined facilities prong of the murder-for-hire statute. See Lentz, 524 F.3d at 514–15; see also Allmendinger, 706 F.3d at 339. Accordingly, we hold that the jury instructions did not constructively amend the indictment in this case.

We can dispose of the appellants' evidentiary challenges more briefly. First, Moore and Latham assert that the district court improperly admitted out-of-court statements made by Samuel Yenawine. And second, they argue that the district court erroneously admitted "character evidence" as to appellant Moore. We find no fault with the district court's evidentiary rulings.

**A.**

At trial, the government called Tyler Lee Tudor to testify about statements Yenawine had made to him before committing suicide. After Yenawine was arrested in April of 2013, Tudor and Yenawine became cellmates and friends in jail. Tudor testified that he and Yenawine had discussed Yenawine's involvement in a murder-for-hire plot targeting someone affiliated with the South Carolina Lottery – as Nancy Cannon was at the time, serving on the South Carolina Lottery Commission. According to Tudor, Yenawine also had stated that the operation involved his ex-wife and a banker.

Moore filed a motion in limine seeking to exclude Yenawine's statements. The district court denied the motion, holding that the statements were admissible under the "statement against interest" exception to the rule against hearsay evidence. See Fed. R. Evid. 804(b)(3). We review the district

14

court's admission of this evidence for abuse of discretion. United States v. Lighty, 616 F.3d 321, 351 (4th Cir. 2010).

"[A] statement made by an unavailable declarant is admissible if it is one that 'a reasonable person in the declarant's position would have made only if the person believed it to be true'" because it "'had so great a tendency to . . . expose the declarant to civil or criminal liability.'" United States v. Dargan, 738 F.3d 643, 649 (4th Cir. 2013) (quoting Fed. R. Evid. 804(b)(3)(A)). The statement must be "supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3)(B).

Moore and Latham contend that the district court abused its discretion in admitting Yenawine's statements under the "trustworthiness" portion of this standard. According to the appellants, Yenawine's statements were inherently unreliable, given that Yenawine might have thought he could "cut a deal to tell his story" and Tudor may have hoped that his testimony would result in leniency in his own case. Opening Br. at 44. But as the district court explained, Yenawine had no reason to shade the story he told a cellmate, and the appellants cannot establish that the district court abused its discretion in finding sufficient corroboration of Yenawine's statements.

Moore and Latham's suggestion that the admission of Yenawine's statements implicated the Sixth Amendment is likewise

15

without merit. Only "testimonial" statements are excludable under the Sixth Amendment's Confrontation Clause, Dargan, 738 F.3d at 650, and we have held that statements by one prisoner to another are "clearly nontestimonial." Id. at 650-51 (quoting Davis v. Washington, 547 U.S. 813, 825 (2006)). The Sixth Amendment adds nothing to the appellants' claim, and we find no error in the admission of Yenawine's out-of-court statements.

**B.**

Moore and Latham's final contention is that the district court admitted certain "character evidence" in violation of Federal Rule of Evidence 404, which prohibits use of character evidence to prove a propensity to engage in particular conduct.[2] Because the appellants did not raise that objection at trial, we review it only for plain error. United States v. Keita, 742 F.3d 184, 189 (4th Cir. 2014). Thus, we may reverse only on a finding that (1) there was "error," (2) that was "plain," (3) that "affect[ed] substantial rights," and (4) that "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 467 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

---

[2] Specifically, Rule 404(a)(1) provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."

16

The testimony to which Moore and Latham object primarily related to Yenawine's prior conviction for arson, his alleged involvement in a murder, and Moore's role as a witness in the related proceedings. In addition, they contend that the government improperly alluded to the crime of money laundering when eliciting testimony related to Latham's payment of Moore's attorney's fees, and Moore's parents' payment of Yenawine's attorney's fees.

Moore and Latham have not established that any of the testimony to which they object was admitted in "error," let alone "plain error." Indeed, some of the testimony was elicited by the appellants themselves, through counsel. Moreover, the record reflects that the district court required the government to correct any misperceptions engendered by its evidence relating to Yenawine's past and the money laundering comment. So even assuming, arguendo, the existence of plain error, we could not find the "serious[] [e]ffect[]" on the "fairness, integrity, or public reputation" of judicial proceedings required for reversal under plain error review. See Johnson, 520 U.S. at 467; Olano, 507 U.S. at 732.

## IV.

For the foregoing reasons, the appellants' convictions are

AFFIRMED.

17