**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4602

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LAMINE CAMARA,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:17-cr-00001-CMH-1)

Argued: September 28, 2018                    Decided: November 6, 2018

Before WILKINSON and HARRIS, Circuit Judges, and William L. OSTEEN, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge Harris wrote the opinion, in which Judge Wilkinson and Judge Osteen joined.

**ARGUED:** John Marcus McNichols, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellant. Kellen Sean Dwyer, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Cadence A. Mertz, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia; Martha C. Kidd, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellant. Dana J. Boente, United States Attorney, Nathaniel Smith III, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

PAMELA HARRIS, Circuit Judge:

A jury convicted appellant Lamine Camara of criminal conspiracy for his involvement in a scheme to acquire and resell luxury vehicles using stolen identities. Ray Ekobena orchestrated this scheme, and Camara's indictment charged him with conspiring "with Ray Ekobena *and* others, known and unknown," to violate three different federal laws. J.A. 9 (emphasis added). Following Camara's trial, the district court instructed the jury using the same language. During deliberations, however, the jury submitted a written question, asking, "Do we need to agree the defendant was conspiring with Ray specifically or conspiring in general?" J.A. 617. The district court responded, "[T]he government has to prove beyond a reasonable doubt that the defendant was conspiring specifically with Ray *or* other known or unknown co-conspirators." J.A. 628 (emphasis added).

Camara identifies two putative constitutional errors based on this supplemental instruction. First, he contends it constructively amended the indictment in violation of the Fifth Amendment by allowing the jury to convict him of a conspiracy that did not involve Ekobena. Second, he argues that it violated his Sixth Amendment right to a trial in a district in which the crime took place, on the theory that Ekobena provided the only connection between his crime and the district in which the government prosecuted him. In the alternative, Camara raises two challenges to the district court's sentence.

Finding no error, we affirm both Camara's conviction and his sentence.

## I.

## A.

2

The case against Camara centered on his involvement in Ray Ekobena's luxury car scheme. Ekobena used stolen identities to submit fraudulent loan applications to car dealerships. Once a dealership approved his loan applications, Ekobena relied on third parties to deliver the vehicles to Washington, D.C. Ekobena then resold those vehicles at a steep discount, mostly because he did not have valid title to transfer to a subsequent buyer, as is required to register a car and receive vehicle tags. In total, Ekobena fraudulently purchased ten vehicles as part of this scheme.

At trial, the government introduced evidence of Camara's involvement in five transactions within Ekobena's scheme. Camara purchased two vehicles from Ekobena, paying as little as one-tenth of their market value. For the first car Camara purchased, Ekobena provided a Virginia title with the name of an identity theft victim. Camara forged the identity theft victim's signature on the title and on the bill of sale in order to submit a Maryland title application. For the second, Camara received no title at all from Ekobena. Instead, Camara paid an individual named Zambia Jackson $150 for temporary tags – even though he knew the state of Maryland charged only $20 for legitimate tags. Camara did not know Jackson, and he never attempted to verify that she had the authority to issue vehicle tags. The tags Camara eventually received were fraudulent, stating that he purchased the vehicle from a dealership that does not exist.

Camara also facilitated three other transactions involving Ekobena. He introduced Ekobena to two friends, each of whom purchased cars from Ekobena. Camara participated in the delivery of both vehicles, and Ekobena paid him for his involvement. Because neither vehicle came with valid title, Camara ordered temporary tags from Jackson for

3

each. Finally, Camara connected Ekobena with his local mechanic, who placed an order for a car and deposited money in Ekobena's account.

Before Ekobena could acquire that last vehicle, he was arrested. Ekobena ultimately pleaded guilty to seven felonies, three of which involved his use of stolen identities to purchase cars. Soon after Ekobena's arrest, federal authorities arrested Camara.

**B.**

A grand jury returned a one-count indictment against Camara. That indictment charged Camara, under 18 U.S.C. § 371, with conspiracy to commit three federal crimes: (1) knowingly transporting stolen vehicles in interstate commerce, in violation of 18 U.S.C. § 2312; (2) knowingly receiving, possessing, concealing, storing, bartering, selling, and disposing of stolen motor vehicles that have crossed state lines, in violation of 18 U.S.C. § 2313; and (3) committing wire fraud, in violation of 18 U.S.C. § 1343. The indictment specifically charged Camara with conspiring "with Ray Ekobena *and* others, known and unknown." J.A. 9 (emphasis added).

Ekobena, who served as one of the government's main witnesses, testified at trial to Camara's extensive participation in his scheme. Camara also testified, and he did not deny his involvement. Instead, Camara staked his defense on the idea that he was unaware that the vehicles involved in Ekobena's scheme were stolen.

At the end of the trial, the district court instructed the jury on the elements of Camara's charged offense. The court told the jury that the government alleged that, "in the Eastern District of Virginia, the defendant did knowingly, willfully conspire and agree together with Ray Ekobena and others, known and unknown," to commit the three federal

4

offenses identified in the indictment. J.A. 593–94. During deliberations, the jury submitted the following written question: "Do we need to agree the defendant was conspiring with Ray specifically or conspiring in general?" J.A. 617. After consulting with counsel, the district court responded that "[t]he best answer I can give you is that the government has to prove beyond a reasonable doubt that the defendant was conspiring specifically with Ray *or* other known or unknown co-conspirators." J.A. 628 (emphasis added). A juror immediately asked for clarification: "Did you say 'and' or—." *Id.* The district court re-read its response and concluded, "So, I've said 'or.'" *Id.*

The jury returned a guilty verdict the next day. The district court sentenced Camara to a 36-month term of imprisonment, and he timely appealed.

## II.

## A.

### 1.

Camara's challenges to his conviction center on the district court's supplemental instruction.[1] His first and primary argument is that the district court's response to the jury's

---

[1] Camara also contests the district court's decision to give a willful blindness instruction. Such an instruction is proper where "the defendant claims lack of guilty knowledge in the face of evidence supporting an inference of deliberate ignorance." *United States v. Lighty*, 616 F.3d 321, 377–78 (4th Cir. 2010) (citing *United States v. Abbas*, 74 F.3d 506, 513 (4th Cir. 1996)). We review the district court's decision to grant the instruction for abuse of discretion, *id.* at 377, and find none here.

5

question constructively amended his indictment in violation of the Fifth Amendment. We disagree.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. It is therefore "'the exclusive province of the grand jury' to alter or broaden the charges set out in an indictment." *United States v. Moore*, 810 F.3d 932, 936 (4th Cir. 2016) (quoting *United States v. Whitfield*, 695 F.3d 288, 309 (4th Cir. 2012)). "[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *United States v. Floresca*, 38 F.3d 706, 711 (4th Cir. 1994) (en banc) (quoting *Stirone v. United States*, 361 U.S. 212, 217 (1960)). A constructive amendment violates these principles by "broaden[ing] the possible bases for conviction beyond those presented by the grand jury," *id.* at 710, through the government's presentation of evidence or the court's instructions to the jury, *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999).

Here, Camara argues, the district court's supplemental instruction constructively amended the indictment against him, permitting the jury to convict him of a conspiracy different than the one charged in the indictment. Because the indictment charged Camara with conspiring with "Ray Ekobena *and* others," J.A. 9 (emphasis added), Camara contends, the government was required to prove his involvement in a conspiracy that involved Ekobena. But by instead instructing the jury that "[t]he government must prove beyond a reasonable doubt that this defendant was conspiring with Ray [Ekobena] *or*

others," J.A. 628 (emphasis added), according to Camara, the district court allowed the jury to convict him of a conspiracy that did *not* include Ekobena.

The first problem for Camara's argument is this: A constructive amendment occurs when an indictment is "altered to change the elements of the offense charged," *Randall*, 171 F.3d at 203 (internal quotation marks omitted), and the identity of Camara's co-conspirator or co-conspirators is not an element of the conspiracy offense with which he was charged. In other words, whether Camara conspired with Ekobena or with someone else, he committed the same offense – perhaps by different means, but the same offense all the same. That offense, conspiracy to violate federal law under 18 U.S.C. § 371, has three elements: an unlawful agreement to commit an offense, the defendant's knowing and willing participation, and an overt act in furtherance of the conspiracy. *United States v. Vinson*, 852 F.3d 333, 352 (4th Cir. 2017). Crucially, the first element requires only that the government establish an agreement between "two or more people." *Id.* "The existence of the conspiracy, rather than the particular identity of the conspirators, is the essential element of the crime." *United States v. Am. Waste Fibers Co.*, 809 F.2d 1044, 1046 (4th Cir. 1987) (per curiam) (citing *United States v. Davis*, 679 F.2d 845, 851 (11th Cir. 1982)). Indeed, the government need not identify *any* co-conspirators. "While two persons are necessary to constitute a conspiracy, 'one person can be convicted of conspiring with persons whose names are unknown.'" *Id.* (quoting *Rogers v. United States*, 340 U.S. 367, 375 (1951)). In short, even assuming the district court's supplemental instruction permitted

7

conviction based on a conspiracy that did not include Ekobena,[2] that instruction did not alter the elements of the charged offense. *See Randall*, 171 F.3d at 203.

We reached a similar conclusion in *United States v. Day*, 700 F.3d 713 (4th Cir. 2012). There, we found that a jury instruction permitting conviction based on an aiding and abetting theory did not constitute a constructive amendment, even though the indictment "neither mentioned nor charged that particular theory of liability." *Id.* at 720. The rule against constructive amendments, we explained, "is focused not on particular theories of liability but on the *offenses* charged in an indictment . . . [and] 'aiding and abetting simply describes the way in which a defendant's conduct resulted in the violation of a particular law.'" *Id.* (quoting *United States v. Ashley*, 606 F.3d 135, 143 (4th Cir. 2010)). The same logic applies here: When Camara argues that the jury may have convicted him based on an agreement with someone other than Ekobena, he does no more than describe different ways of committing the same offense.

Our conclusion puts us in agreement with the Eighth Circuit's decision in *United States v. Behler*, 14 F.3d 1264 (1994), a case involving strikingly similar facts. In *Behler*, count one of the indictment charged the defendant with conspiracy to distribute

---

[2] We assume for purposes of this opinion that Camara's interpretation of the supplemental instruction is correct. We note, however, that the government takes a different view, arguing that the instruction is better read as clarifying only that a conspiracy conviction requires that there be *some* specific co-conspirator, and not just "conspiring in general." And indeed, when Camara argued before the district court as it considered its response to the jury's question, he gave no indication that he understood the issue to be the particular identity or identities of Camara's alleged co-conspirators. We need not resolve this question, however, because even on Camara's reading, the instruction did not constitute a constructive amendment.

methamphetamine, and further specified that the defendant conspired "with Thomas Stephen McRea and others." *Id.* at 1267, 1269. During deliberations, the jury submitted a question to the court: "Does Thomas Stephen McRea have to be a part of the conspiracy to enable a guilty verdict on Count # 1?"; the district court answered "no." *Id.* at 1269. The Eighth Circuit held that there had been no constructive amendment, reasoning that "what was removed from the case" – the identity of the co-conspirator – "was in no way essential to the offense on which the jury convicted." *Id.* at 1270 (quoting *United States v. Lueth*, 807 F.2d 719, 734 (8th Cir. 1986)).

Our decision also is consistent with *United States v. Weissman*, 899 F.2d 1111 (11th Cir. 1990), on which Camara chiefly relies. In *Weissman*, a case involving charges under the Racketeer Influenced and Corrupt Organizations Act (RICO), the indictment specified the one (and only) RICO enterprise in which the defendants allegedly were involved – "to wit, a group of individuals associated in fact known as the DeCavalcante Family." *Id.* at 1112. But the trial court, in response to a jury question, instructed that the government did not have to prove that "the enterprise was the DeCavalcante Family" if it proved the existence of some other enterprise. *Id.* at 1113. The Eleventh Circuit concluded that instruction was improper: Because the government "chose to specify" a named enterprise instead of charging in "general language," the instruction, though it "accurately stated the general law," could not be reconciled with the indictment and constituted a constructive amendment. *Id.* at 1115. Here, by contrast, the government *did* charge in "general language," *id.*, declining to limit the scope of the conspiracy to Ekobena alone, and instead accusing Camara of conspiring with Ekobena "and with others, known and unknown," J.A.

9

9. Given that general language, the specific identity of any co-conspirator – unlike the identity of the specified enterprise in *Weissman* – was not "an essential element of the crime charged," 899 F.2d at 1115 (quoting *United States v. Lignarolo*, 770 F.2d 971, 981 n.15 (11th Cir. 1985)).

Moreover, by charging Camara as it did, the government put Camara on full notice of the case against him. Camara was aware, that is, that the government believed other co-conspirators were involved in Ekobena's scheme, and could prepare a defense accordingly. The defendants in *Weissman*, on the other hand, had no reason to expect that they would have to defend at trial against claims that they were associated with any enterprise other than the specified "DeCavalcante Family." This is an important distinction; one of the central purposes of the indictment is to provide sufficient notice to "allow[] the accused to prepare a defense as to every element of the indicted crime." *United States v. Promise*, 255 F.3d 150, 189 (4th Cir. 2001) (en banc) (Motz, J., concurring in part, dissenting in part, and dissenting in the judgment) (citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948)); *see also Behler*, 14 F.3d at 1270 (rejecting defendant's constructive amendment argument in part because the supplemental instruction did not undermine the defense).

Here, Camara can point to no way in which his defense was prejudiced by the district court's supplemental instruction. Camara's trial defense – that he participated in buying and selling luxury cars with Ekobena, but was unaware that the cars were stolen – had nothing to do with the precise identity of his co-conspirators. As in *Behler*, Camara's defense "did not rise or fall on a conjunctive reading of the charge." 14 F.3d at 1270. And although the thrust of Camara's argument is that the "or" in the district court's instruction

allowed the jury to convict him of a conspiracy that did not include Ekobena, that possibility remains entirely hypothetical: Even on appeal, Camara has yet to identify some separate and distinct conspiracy, not involving Ekobena, that was proved or even argued by the government at trial. On the contrary, the government's evidence established only one conspiracy, with Ekobena at its center, and – presumably for that reason – Camara never requested a multiple conspiracy jury instruction. In light of the "arguments of the parties and the evidence presented at trial," Camara's jury had no reason to think it had been given "license to convict" Camara of some distinct conspiracy of which Ekobena was not a part. *Moore*, 810 F.3d at 936 (quoting *United States v. Lentz*, 524 F.3d 501, 514–15 (4th Cir. 2008)).

In sum, the district court's supplemental instruction neither altered an element of the conspiracy charged by Camara's indictment nor prejudiced Camara's defense. Accordingly, we hold that the instruction did not constitute a constructive amendment in violation of the Fifth Amendment.

2.

Camara next contends that this same supplemental instruction violated his constitutional "right to a trial 'by an impartial jury of the State and district wherein the crime shall have been committed,'" *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000) (quoting U.S. Const. amend. VI); *see also* Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). Again, we disagree.

11

In a conspiracy case, venue is proper "'in any district in which any act in furtherance of the conspiracy was committed,' and 'proof of acts by one co-conspirator can be attributed to all members of the conspiracy.'" *United States v. Smith*, 452 F.3d 323, 335 (4th Cir. 2006) (quoting *United States v. Al-Talib*, 55 F.3d 923, 928 (4th Cir. 1995)). Camara argues that Ekobena provided the only link to the Eastern District of Virginia, where Camara was tried. Because he believes the district court's supplemental instruction permitted the jury to convict him of a conspiracy that did not involve Ekobena, he contends that the instruction permitted the jury to find him guilty of a crime that was not committed in the Eastern District of Virginia.

At the outset, we note that there is a serious question as to whether Camara waived his venue challenge by failing to raise the issue when the district court indicated it would answer the jury's question as it ultimately did. *See United States v. Collins*, 372 F.3d 629, 633 (4th Cir. 2004) (declining to address defendant's improper venue claim due to his failure to timely object). At trial, Camara lodged only a general objection to the court's supplemental instruction, failing to even mention venue despite offering extended argument on the appropriate response to the jury's question. But even if Camara did not waive his venue argument, our review is for plain error only, because Camara failed to object specifically on venue grounds. *See* Fed. R. Crim. P. 30(d); *United States v. Olano*, 507 U.S. 725, 731–32 (1993) (citing Fed. R. Crim. P. 52(b)). Camara bears the burden of establishing plain error, *Olano*, 507 U.S. at 734, and he cannot carry that burden here.

The district court instructed the jury that the government was required to establish that either "the agreement or an overt act took place in this district." J.A. 608. The court

12

later reiterated that it was the government's burden to establish "that part of the conspiracy took place in the Eastern District of Virginia." *Id.* Camara does not maintain that these instructions were incorrect as a matter of law. Instead, he argues only that the district court's supplemental instruction introduced the possibility that the jury would convict without finding venue proper. Yet "[i]t is the almost invariable assumption of the law that jurors follow their instructions." *Olano*, 507 U.S. at 740 (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)).

Moreover, the government introduced ample evidence that Camara or one of his co-conspirators committed an "act in furtherance of the conspiracy" in the Eastern District of Virginia, *Smith*, 452 F.3d at 335. Ekobena lived and ran the scheme out of his apartment, in Alexandria, Virginia, as well as his girlfriend's home, in Springfield, Virginia. Camara and Ekobena were frequently in touch: Over the course of a three-week period, they exchanged 166 calls. Camara himself drove one of the stolen vehicles from Washington, D.C., to Ronald Reagan Washington National Airport, in Arlington, Virginia, to drop off the third party who delivered the car to D.C. from a dealership in Massachusetts. And the evidence suggests that, at Ekobena's direction, at least two of the stolen vehicles were driven through the Eastern District of Virginia before being delivered to their purchasers. *See* 18 U.S.C. § 3237(a) (venue is proper for offenses involving transportation in interstate commerce in "any district in which such offense was begun, continued, or completed").

Camara's only response to these multiple contacts is that many of them involve Ekobena, and that under his theory of the case – that the supplemental instructions permitted the jury to convict based on a distinct conspiracy in which Ekobena was not

13

involved – they should not be considered here. But we have held already that Camara has failed to identify any separate conspiracy, apart from Ekobena, of which he could have been convicted. And, in any event, it was Camara himself who made the drive, in a stolen vehicle, to Arlington, Virginia, in furtherance of the conspiracy. Camara's venue argument fails, and we affirm his conviction.

**B.**

We turn now to Camara's challenges to his sentence. At sentencing, the district court calculated an offense level of 20 under the Sentencing Guidelines, which translated to a Guidelines range of 33 to 41 months in prison. The total offense level reflected a loss calculation of $276,331 and a two-point enhancement for "being in the business of receiving and selling stolen property," U.S.S.G. § 2B1.1(b)(4). The district court sentenced Camara to a 36-month term of imprisonment and a two-year period of supervised release. We review the district court's factual findings for clear error and its legal conclusions de novo, *United States v. Llamas*, 599 F.3d 381, 387 (4th Cir. 2010), and we affirm.

Camara first disputes the district court's loss calculation. "[T]he determination of loss attributable to a fraud scheme is a factual issue for resolution by the district court, and we review such a finding of fact only for clear error." *United States v. Godwin*, 272 F.3d 659, 671 (4th Cir. 2001). The district court based its loss calculation on the estimated value of the vehicles involved in the five transactions in which Camara participated. Camara objects on the ground that the court should have considered only the value of the two cars he purchased directly from Ekobena, and not the value of the other three cars, as to which he played a more minimal role. That argument is unavailing. The three transactions on

14

which Camara focuses were indisputably "within the scope" of the conspiracy of which he was convicted, and that is enough to make the associated losses attributable to him under U.S.S.G. § 1B1.3(a)(1)(B).

Camara also challenges the district court's finding that he was in the "business of receiving and selling stolen property" under U.S.S.G. § 2B1.1(b)(4), resulting in a two-point enhancement to his offense level. The Sentencing Guidelines adopt a "totality of the circumstances" approach to this issue, *United States v. White*, 77 F. App'x 678, 682 (4th Cir. 2003) (per curiam), and provide a non-exhaustive list of factors to guide courts in making the determination: (1) the regularity and sophistication of the defendant's activities, (2) the value and size of the inventory of the stolen property, (3) the extent to which the defendant's activities encouraged or facilitated other crimes, and (4) the defendant's past activities in stolen property, *United States Sentencing Guidelines Manual* § 2B1.1, cmt. n.5 (U.S. Sentencing Comm'n 2016).

The evidence fully supports the district court's conclusion here. Camara purchased two different luxury vehicles at steep discounts and fraudulently registered them using different methods. He connected Ekobena with three other interested purchasers, each of whom paid Ekobena and two of whom ultimately received stolen vehicles from Ekobena. As noted above, the estimated total value of the vehicles involved in these transactions exceeded $276,000. Camara also participated in the delivery of the vehicles he did not purchase, received payment for his efforts, and helped secure fraudulent tags for those vehicles. Under these circumstances, and in light of the guidance provided by the

15

Sentencing Commission, we find no error in the district court's finding that Camara was in the "business of receiving and selling stolen property" under U.S.S.G. § 2B1.1(b)(4).

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*