**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4718

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

RUSLANS BONDARS, a/k/a Ruslan Bondar,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, District Judge. (1:16-cr-00228-LO-1)

Argued: September 20, 2019                    Decided: January 10, 2020

Before MOTZ, KING, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Motz and Judge King joined.

**ARGUED:** Jessica Nicole Carmichael, AYOTTE CARMICHAEL ELLIS & BROCK PLLC, Alexandria, Virginia, for Appellant. Kellen Sean Dwyer, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellant. **ON BRIEF:** Ryan K. Dickey, Computer Crime and Intellectual Property Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; G. Zachary Terwilliger, United States Attorney, Laura Fong, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

A jury convicted Ruslans Bondars of conspiracy under 18 U.S.C. § 371, conspiracy to commit wire fraud under 18 U.S.C. § 1349, and aiding and abetting computer intrusions under 18 U.S.C. §§ 1030(a)(5)(A) and 2.  Bondars appeals, arguing that the district court erred in refusing to provide his requested jury instructions and limiting his cross-examination of an FBI agent.  Additionally, Bondars argues that insufficient evidence supports his convictions for conspiracy and aiding and abetting.

We conclude that the district court committed no reversible error and that sufficient evidence supports the jury's verdict.  Accordingly, we affirm.

I.

On appeal from a criminal conviction, we view the facts in the light most favorable to the government.  *United States v. Washington*, 743 F.3d 938, 940 (4th Cir. 2014).

A.

Bondars was convicted for his role in creating and operating an online service used to develop malware.  The service, called "Scan4You," allowed users to scan a file or web address to determine whether it was detectable by antivirus programs.  The key feature of Scan4You was anonymity: unlike other scanning services, Scan4You didn't report results to antivirus companies.  This enabled hackers to use the tool anonymously to develop undetectable malware.

Scan4You earned a reputation as a premier counter-antivirus service.  The service operated on the Dark Web, advertised on hacking forums, and advertised other malware

3

products on its website.  The website's banner read: "Scan4You.net – Online Anonymous

Virus and Malware Scan."  J.A. 1184.

Bondars created and oversaw Scan4You along with his childhood friend, Jurijs

Martisevs.  According to online messages between the pair, Bondars and Martisevs

collaborated on a number of hacking schemes, and used Scan4You to develop their own

malware.  At times, they discussed the criminal nature of their activities and the need to

conceal their operations.  In 2013, for instance, Martisevs told Bondars that Scan4You was

being investigated by United States authorities, and Bondars replied that the pair needed to

be discreet.  Later on, Martisevs sent Bondars an article about a Scan4You partner's arrest

in the United Kingdom and the pair discussed the potential need to scale back operations

and "clean[] up the news."  J.A. 591–95.  Martisevs also sent Bondars an article titled

"Criminal Services – Counter Antivirus Services" that named Scan4You as "[p]erhaps the

best known" counter-antivirus service, and told him that "[t]hey exposed us big time right

here" and "[t]his is all about us."  J.A. 593–94.  Again, the pair discussed the potential need

to scale back operations and clean up the news.  Nonetheless, they continued to operate

Scan4You as usual.

B.

By superseding indictment, Bondars was charged with conspiracy to commit and to

aid and abet computer intrusions, and conspiracy to commit and to aid and abet wire fraud.

The government named both Martisevs and Scan4You users as coconspirators.

Additionally, Bondars was charged with the conspiracy's underlying offenses: the

4

commission and aiding and abetting of computer intrusions and wire fraud. Bondars proceeded to trial.

At trial, an FBI case agent testified for the government. On direct examination, the agent testified that he discovered Bondars's connection to Scan4You (which was concealed from the Scan4You website) "[b]y receiving court orders" and "results from contents of e-mail accounts." J.A. 496. On cross-examination, Bondars sought to show that, in fact, the agent relied on information provided to the FBI by an antivirus company called Trend Micro.[1] Bondars argued that the agent's initial testimony was inaccurate and sought to impeach the agent by proving he relied on Trend Micro's information. Over the government's objection, the court allowed Bondars to pursue this line of questioning for the limited purpose of impeachment. However, the court prohibited Bondars from asking questions implying that the agent's reliance on the information was unlawful.

As further evidence of the conspiracy, the government introduced instant messages that showed Bondars and Martisevs discussing various hacking schemes. Many of these messages predated the beginning of the charged conspiracy. Bondars moved to exclude the messages, claiming that they were irrelevant and constituted impermissible propensity evidence in violation of Federal Rule of Evidence 404(b). The court, however, found that the messages were highly relevant to Bondars's motive, intent, and knowledge. It therefore admitted the messages but provided a corresponding limiting instruction.

---

[1] In response to counsel's questions, the agent conceded that he "may have" relied on information provided by Trend Micro. J.A. 695.

5

At the charge conference, Bondars requested a "buyer-seller" instruction, which would inform the jury that a mere buy-sell relationship is insufficient to support a conspiracy conviction. The court denied the request, finding it inapplicable to the facts of the case. The court reasoned that buyer-seller instructions are an extension of Wharton's Rule, which presumes that criminal agreements between two people to commit a crime that requires two people for its commission are not conspiracies. Additionally, the court noted that the conspiracy was based not only on Bondars's relationship with Scan4You users, but also on Bondars's relationship with Martisevs, to which the buyer-seller instruction was irrelevant.

Bondars also objected to the government's proposed instructions on the conspiracy offenses, contending that they didn't include the necessary elements of aiding and abetting. A conspiracy to aid and abet is distinct from other conspiracies, Bondars argued, because it requires the government to prove knowledge of the underlying crime and intent to further it. The court ruled that the government's proffered instruction adequately conveyed those elements.

Bondars raised a similar objection to the verdict form, requesting that the court instruct the jury that to convict on conspiracy to aid and abet, the government must show Bondars joined the conspiracy "knowing that the [crime] was occurring or about to occur and with the intent to further that [crime]." J.A. 1011. The government included Bondars's requested language, except that the form directed the jury to find that Bondars needed to know that "a" crime—rather than "the" crime—was occurring or about to occur. The court agreed that this formulation correctly stated the law.

6

During its deliberations, the jury asked the court whether it could consider pre-2009 evidence given that the charged conspiracy began "at least on or about 2009." J.A. 1242. Believing that this question referred to the Rule 404(b) evidence, Bondars requested that the court direct the jury to the corresponding limiting instruction. The court instead told the jury that it should consider all admitted evidence, and that it "must be guided by the Jury Instructions" in that consideration. J.A. 1248.

The jury returned a special verdict, finding Bondars guilty of conspiring to commit and to aid and abet every object charged on the conspiracy counts. Additionally, the jury found Bondars guilty of aiding and abetting computer intrusions, but not guilty of aiding and abetting wire fraud. Bondars was sentenced to 168 months in prison.

This appeal followed.

## II.

The issues before us are whether: (1) the district court erred by refusing to provide Bondars's requested jury instructions, (2) the district court erred by limiting Bondars's cross-examination of an FBI agent, and (3) sufficient evidence supports Bondars's convictions for conspiracy and aiding and abetting. We consider each issue in turn.

## III.

Bondars contends that the district court erred in its jury instructions. This Court reviews "the decision to give (or not to give) a jury instruction and the content of an instruction" for abuse of discretion. *United States v. Savage*, 885 F.3d 212, 222 (4th Cir.

2018) (quoting *United States v. Russell*, 971 F.2d 1098, 1107 (4th Cir. 1992)). A district court's refusal to give a requested instruction is reversible error "only if the instruction: (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995) (internal quotation marks and citation omitted). Additionally, the defendant must "show that the record as a whole demonstrates prejudice." *United States v. Bartko*, 728 F.3d 327, 343 (4th Cir. 2013).

## A.

Bondars first argues that the district court erred by refusing to instruct the jury that "[t]he existence of a simple buyer-seller relationship between a defendant and another person, without more, is not sufficient to establish a conspiracy, even where the buyer intends to resell the product." J.A. 900. Without this instruction, Bondars contends, the jury was allowed to convict Bondars based on mere buyer-seller relationships with Scan4You consumers. The government responds that the instruction was categorically inapplicable and that, in any event, the jury was instructed that it couldn't convict based on an innocent buyer-seller relationship.

We conclude that the district court's refusal to give the requested instruction was not an abuse of discretion because it did not "seriously impair[] the defendant's ability to conduct his defense." *Lewis*, 53 F.3d at 32 (internal quotation marks and citation omitted).

8

And, in our view, the court's instructions also conveyed to the jury that a mere buyer-seller relationship was insufficient to convict Bondars of conspiracy.[2]

Our decision in *Lewis* is instructive. There, we held that the district court's failure to provide a "government-agent" instruction (providing that one cannot be convicted of conspiring with a government agent) was reversible error because a "strong possibility" existed that the defendant was convicted for conspiring with government agents: the "bulk of the evidence" consisted of the defendant's interactions with the government agent, and only "conflicting" evidence supported the defendant's conspiracy with another individual. *Id*. at 35. Thus, we were left with "no doubt" that the court's failure to provide the government-agent instruction seriously impaired the defense. *Id*.

By contrast, there is little, if any, possibility that Bondars was convicted based on a mere buyer-seller relationship with Scan4You consumers. Substantial evidence controverted Bondars's narrative that his relationships to Scan4You customers were merely innocent buy-sell agreements. The government's evidence showed that Bondars and Martisevs operated the tool for the purpose of developing malware, intentionally marketed the tool to hackers, entered into customer agreements with prolific hackers, and

---

[2] Before the district court, the parties spent much time addressing whether the buyer-seller instruction derives from Wharton's Rule, the presumption that an agreement between two people to commit a crime that requires two people for its commission cannot be prosecuted as a conspiracy. *See Iannelli v. United States*, 420 U.S. 770, 785–86 (1975). The government argued (and the district court agreed) that because Wharton's Rule is inapplicable to Bondars's case, its derivative buyer-seller instruction is also inapplicable. Bondars responded that the buyer-seller instruction describes a complete defense to conspiracy that is independent of Wharton's Rule. Given our conclusion that the instructions sufficiently conveyed the essence of Bondars's defense, we decline to reach this issue.

took various measures to conceal their activity from authorities because they believed they were doing something illegal. Moreover, Bondars's conspiracy conviction also rested on his dealings with Martisevs. Extensive evidence—including detailed testimony from Martisevs and chat messages between the pair—supported a conspiracy conviction based on that relationship. And finally, the instructions given sufficiently conveyed to the jury that to convict Bondars for conspiracy the government must show that Bondars "knew the purpose of the agreement," had "knowledge of the purposes of the conspiracy," and "deliberately joined the conspiracy." J.A. 1038, 1042–43. Thus, the jury was adequately informed that mere buy-sell transactions do not constitute conspiracy.

B.

Next, we address Bondars's argument that the conspiracy instructions failed to adequately incorporate the elements of aiding and abetting. As we explain, we disagree and find that the substance of Bondars's proposed instruction was substantially conveyed by other instructions given to the jury. In any event, any error was harmless. *See United States v. Ramos-Cruz*, 667 F.3d 487, 496 (4th Cir. 2012) (noting that an erroneous jury instruction is harmless when it is clear that a reasonable jury would have found the defendant guilty absent the error).

1.

First, Bondars argues that his proposed instructions were necessary to reflect the criminal intent required for aiding and abetting a conspiracy. But the instructions provided sufficiently covered this point. Relevant here, Bondars's proposed instruction would have required the jury to find that he: (1) knew the crime charged was to be committed or was

10

being committed; (2) knowingly joined the conspiracy for the purpose of aiding, commanding, or encouraging the crime; and (3) acted with the intention of causing the crime charged to be committed. The jury was instead instructed that "[t]o find the defendant guilty of conspiracy to aid and abet an offense, you must find that the defendant *knew* that another was committing or was about to commit the substantive offense and *intended* by his agreement to aid the offense and cause it to occur." J.A. 1043 (emphases added). Thus, the intent element was "substantially covered" by the instructions given. *See Lewis*, 53 F.3d at 32.

2.

Next, Bondars objects to the language of the verdict form, which instructed the jury that conspiracy to aid and abet required that Bondars knew "a" computer intrusion or wire fraud was occurring or about to occur. Bondars argues that the use of the indefinite article "a," rather than the definite article "the," improperly permitted the jury to convict based on any potential offense committed by any unknown Scan4You user. According to Bondars, this error impermissibly expanded the elements of aiding and abetting.

But Bondars's argument overlooks the remainder of the verdict form, which required not only that Bondars knew "a" computer intrusion or wire fraud was occurring or about to occur, but also that he intended "to further *that* computer intrusion" or "*that* wire fraud." J.A. 1155–57 (emphases added). Such an instruction did not, as Bondars argues, permit the jury to convict based on merely a possible criminal occurrence. Instead, the government was required to prove that Bondars knew of a relevant crime and intended to further the occurrence of *that* specific crime. Moreover, Bondars's requested language

11

may have erroneously suggested to the jury that the conspiracy required Bondars to know the identity of each coconspirator. That is not the law. *See United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993).

3.

Bondars next argues that the jury instructions and verdict form warrant reversal in light of *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173 (6th Cir. 1992). There, the government alleged that the owner of a garden supply store (and his employee) conspired to aid and abet the manufacture of marijuana. *Id.* at 174–75. The indictment alleged various legal acts associated with manufacturing marijuana, but neither (i) that the underlying crime occurred nor (ii) that the defendants' otherwise legal conduct advanced an underlying crime. *Id.* at 175–77. As a result, the court held that the indictment failed to allege essential elements of conspiracy to aid and abet: "knowledge of the underlying crime and intent to further it." *Id.* at 179–80.

The government says, and we agree, that the necessary guidance as to knowledge and intent that was missing in *Superior Growers* was conveyed to the jury here. Immediately after providing the conspiracy instruction, the district court informed the jury that "[t]o find the defendant guilty of conspiracy to aid and abet an offense, you must find beyond a reasonable doubt that the defendant *knew* that another was committing or was about to commit the substantive offense and *intended* by his agreement to aid the offense and cause it to occur." J.A. 1043 (emphases added). This language closely tracks that called for by the court in *Superior Growers*.

12

4.

Finally, we are satisfied that any error in the court's description of conspiracy to aid and abet—whether in the jury instructions or the verdict form—was harmless.[3] Aiding and abetting the underlying offense was one among several objects found by the jury in support of its verdict on the conspiracy counts. In fact, the government charged Bondars with conspiring to commit six objects in count one and two objects in count two. The jury returned a guilty verdict on every object charged. So, even if the court erred in the manner alleged by Bondars, there would nonetheless be a "valid and independent legal basis" to affirm. *See United States v. Cone*, 714 F.3d 197, 211 (4th Cir. 2013) (quoting *United States v. Lawson*, 677 F.3d 629, 655 (4th Cir. 2012)).

C.

We turn now to the question of whether the district court erred in responding to the jury's question regarding the pre-2009 evidence. At trial, the government introduced conversations between Bondars and Martisevs that occurred before the charged conspiracy, which began in 2009. Bondars objected, arguing that the evidence was inadmissible under Rule 404(b). The district court admitted the evidence to prove intent and provided a corresponding limiting instruction.

---

[3] Bondars also argues—relying again on *Superior Growers*—that conspiracy to aid and abet requires the government to prove the commission of the underlying offense. *See* 982 F.2d at 178 ("Without the underlying crime, there can be no knowledge or intent to further it."). The government disputes this. Because any such error would have been harmless, we decline to reach this argument.

13

During its deliberations, the jury asked the district court whether it was "allowed to consider evidence" predating 2009. J.A. 1242. Bondars requested that the court direct the jury to the limiting instruction regarding Rule 404(b) evidence. The district court declined to specifically mention that instruction, answering instead that the jury was "allowed to consider all evidence admitted" and "must be guided by the Jury Instructions" in that consideration. J.A. 1248.

In support of his claim, Bondars relies on *United States v. Cox*, where we upheld the admission of Rule 404(b) evidence "in view of the limiting instruction provided by the district court." 591 F. App'x 181, 185 (4th Cir. 2014). There, we noted that the limited purpose of Rule 404(b) evidence was "properly explained" to the jury, and in "very clear terms." *Id*. But here, too, the district court provided a clear instruction regarding the limited use of the Rule 404(b) evidence. Bondars doesn't argue that the instruction was improper, but only that the court should have referenced it in its supplemental instruction.

We rejected a similar argument in *United States v. Camara*, 908 F.3d 41 (4th Cir. 2018). There, the defendant appealed his conspiracy conviction based, in part, on a supplemental instruction informing the jury that it could convict the defendant for conspiring with individuals "known or unknown." *Id.* at 45. The defendant argued that this instruction created the possibility that the jury convicted him for a conspiracy outside of the trial court's district, rendering venue improper. *Id.* at 48. According to the defendant, this possibility existed despite a separate instruction regarding the jury's burden to find venue. *See id.* at 48–49. We disagreed because the court had already properly instructed the jury on the matter, the defendant didn't argue those instructions were

14

erroneous, and "[i]t is the almost invariable assumption of the law that jurors follow their instructions." *Id.* at 49 (quoting *United States v. Olano*, 507 U.S. 725, 740 (1993)). So too here.

IV.

We next consider Bondars's argument that the district court erred by limiting his cross-examination of a witness. We review a district court's limitation on the scope of cross-examination for abuse of discretion. *United States v. Zayyad*, 741 F.3d 452, 458 (4th Cir. 2014). The district court enjoys "wide latitude" to impose reasonable limits on cross-examination "based on concerns including harassment, prejudice, confusion of the issues, repetition, or marginal relevance." *Id.* at 459 (quoting *United States v. Turner*, 198 F.3d 425, 429 (4th Cir. 1999)).

Bondars argues that the district court prevented him from advancing his theory of the defense by restricting his cross-examination of the lead FBI case agent. During the investigation, the agent received information about Scan4You from an antivirus company called Trend Micro. According to Bondars, Trend Micro had improperly accessed Scan4You's administrative page and provided the information found there to the FBI. Bondars claims that the agent concealed this fact by testifying that he had discovered Bondars's identity via subpoenas. Bondars reasons that his prohibited cross-examination was necessary to (1) impeach the FBI case agent and (2) illustrate a legitimate need for anonymous services like Scan4You.

The district court, however, permitted lengthy cross-examination of the FBI case agent on this issue. In fact, the court allowed this line of questioning over the government's objection, stating that whether the agent "misrepresented how he arrived at the information" was relevant to impeachment. J.A. 681. The court only limited counsel from implying that the agent had somehow broken the law by receiving information from Trend Micro.[4] We are satisfied that Bondars was permitted to develop his defense theory through cross-examination.

V.

Finally, we consider Bondars's argument that the evidence was insufficient to convict him of the conspiracy and aiding and abetting counts. "A defendant challenging the sufficiency of the evidence to support his conviction bears a heavy burden." *United States v. Lefsih*, 867 F.3d 459, 465 (4th Cir. 2017) (quoting *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997)). In reviewing the sufficiency of the evidence, the jury verdict must be sustained "if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by substantial evidence." *United States v. Burfoot*, 899 F.3d 326, 334 (4th Cir. 2018). "Substantial evidence is that which a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

---

[4] The district court found that there was no allegation, nor could there have been, that the government's reliance on information provided by Trend Micro was illegal.

16

A.

First, Bondars argues that insufficient evidence supports his convictions for conspiracy to commit wire fraud under 18 U.S.C. § 1349 and computer intrusions under 18 U.S.C. § 371. Both conspiracy counts required the jury to find that Bondars knowingly participated in an agreement with intent to pursue a criminal objective. *See Burfoot*, 899 F.3d at 335 ("Conspiracy to commit wire fraud under 18 U.S.C. § 1349 requires a jury to find that . . . the defendant willfully joined the conspiracy with the intent to further its unlawful purpose."); *United States v. Moussaoui*, 591 F.3d 263, 296 (4th Cir. 2010) ("[t]he elements of a conspiracy charge" include the defendant's "knowing and willing participation" in a criminal agreement). The "gravamen of the crime of conspiracy is an agreement to effectuate a criminal act." *United States v. Laughman*, 618 F.2d 1067, 1074 (4th Cir. 1980). At the same time, "one may be a member of a conspiracy without knowing its full scope, or all its members, and without taking part in the full range of its activities." *Banks*, 10 F.3d at 1054.

Bondars claims there is insufficient evidence that he entered into an agreement with the intent to further a criminal objective. In making this argument, Bondars continues to advance the theory that he built and operated Scan4You solely for legitimate purposes. Additionally, Bondars maintains that he couldn't have formed an agreement with Scan4You users because he didn't communicate directly with them.

We disagree. For starters, the jury clearly found that Bondars and his co-conspirators knowingly formed a criminal agreement. The jury was instructed that both conspiracy counts required it to find that Bondars entered into "conscious understanding

17

and deliberate agreement," "knowingly and deliberately entered into" a criminal agreement, "knew the purpose or goal of the agreement or understanding and then deliberately entered into the agreement," and that he "intend[ed] in some way to accomplish the goal or purpose" of that agreement. J.A. 1044–45. The jury then determined that the government had met its burden on each charged object of the conspiracy.

Ample evidence supports the conclusion that Bondars conspired with both Martisevs and Scan4You users to advance criminal hacking schemes. Bondars clearly formed an agreement with Martisevs to operate Scan4You for criminal purposes. Martisevs testified at trial that he and Bondars used the tool to advance their own personal malware and were aware they were engaging in criminal activity. This testimony was corroborated by online messages between the pair.

And Bondars and Martisevs advertised Scan4You on hacker forums, advertised malware on the Scan4You website, entered into client agreements with prolific hackers, and expressed fear of criminal prosecution and the need to be discreet. Bondars says that he never communicated with Scan4You clients directly, so he couldn't have formed a criminal agreement with them. But it is well-settled that a conspiracy may be proven by circumstantial evidence. *See United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008) ("Because a conspiracy is by nature 'clandestine and covert,' there rarely is direct evidence of such an agreement." (quoting *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996))). And it's equally well-settled that one may be convicted of conspiracy without knowing each of the conspiracy's members. *Banks*, 10 F.3d at 1054.

18

In sum, sufficient evidence supports Bondars's convictions on the conspiracy counts.

B.

Next, Bondars argues that insufficient evidence supports his conviction for aiding and abetting computer intrusions. Aiding and abetting liability for a criminal offense attaches when an individual "(1) takes an affirmative act in furtherance of [an] offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014). The second prong—the intent element—is satisfied when "a person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission." *Id.* at 77.

The first prong of aiding and abetting liability—an affirmative act—is evident on this record: Bondars created and sold a tool to individuals who used it to develop malware. As for the second prong, Bondars maintains that he built Scan4You to provide a legitimate service and was unaware of any individual user's criminal plans. Thus, Bondars concludes, he didn't have the requisite intent to aid and abet the computer intrusions committed by Scan4You users. We do not agree.

The facts before us are similar to those considered by the Second Circuit in *United States v. Zambrano*, 776 F.2d 1091 (2d Cir. 1985). There, the defendant was convicted of aiding and abetting a credit card scheme based on his sale of plain plastic cards. *Id.* at 1092. The cards were sold to middlemen, turned into illegal counterfeit credit cards, and then resold to individuals who used them to make fraudulent purchases. *Id.* at 1092–93. The defendant contended that he lacked the requisite intent to aid and abet because the

19

cards he sold were not illegal, he was far removed from the cards' use, and he neither embossed nor fraudulently used the cards himself. *Id.* at 1096.

The Second Circuit sustained the conviction, finding that the defendant knew that the cards were being used unlawfully but nonetheless continued to supply them. *Id.* at 1097. As the court said, "[i]f the cards were not to be used or sold unlawfully, no cards would have been purchased," thus, "one can infer that [the defendant] intended his cards to be put to this specific use." *Id.*

Similarly, here, substantial evidence supports the same inference. Scan4You was billed as a "malware scan," advertised other malware products on its site, and was advertised on hacker forums. J.A. 1184. Bondars and Martisevs operated discreetly, employing various aliases and concealing their identities because they believed they were "doing something illegal." J.A. 845. And Bondars discussed with Martisevs the reputation of Scan4You as a criminal counter-antivirus tool, the arrest of a Scan4You partner, and his own potential criminal liability. Moreover, Bondars was crucial to the tool's operation: he oversaw Scan4You's technical aspects and received half of the proceeds it generated.

In short, the evidence established that Bondars "played an integral role in the success of the criminal venture." *See Zambrano*, 776 F.2d at 1098. Accordingly, we sustain Bondars's conviction for aiding and abetting computer intrusions.

VI.

For the foregoing reasons, we affirm the district court's judgment.

*AFFIRMED*

20